**Albert LASSITER, Plaintiff,**

v.

**Janet RENO, et al., Defendants.**

**No. 3:94CV626.**

United States District Court, E.D. Virginia, Richmond Division.

May 15, 1995.

Jay Joseph Levit, John B. Mann, Levit & Mann, Richmond, VA, for plaintiff.

Nicholas Stephan Altimari, U.S. Attorney's Office, Richmond, VA, for defendant.

## MEMORANDUM OPINION

RICHARD L. WILLIAMS, Senior District Judge.

This matter is before the Court on the defendants' Motion to Dismiss and/or for Summary Judgment. For the reasons set forth below, the Court grants the motion.

### I. Background

From January 12, 1970 until his discharge on May 1, 1992, plaintiff Albert Lassiter worked as a Deputy United States Marshal for the United States Marshal Service ("USMS") in the Richmond Division of the Eastern District of Virginia. In November 1990, plaintiff began to suspect that his elderly next-door neighbor was conspiring with several unidentified individuals to burglarize his home in Midlothian, Virginia. Plaintiff noticed, for instance, that his neighbor's daughter followed him to work one day, and that several vehicles drove slowly through his neighborhood on a daily basis. Plaintiff reported his observations to the Chesterfield County Police Department, which conducted an investigation and concluded that no burglary conspiracy existed. Defs.' Ex. 2 at 8.

During the next month, however, plaintiff pretended to be away from home in the hopes of apprehending the burglars when they broke into his residence. Plaintiff refused to answer his telephone, turn on his lights, and flush his toilets for fear that such actions would alert someone that he was home. In particular, plaintiff armed himself with Government-issued and privately-owned weapons in order to defend himself against the burglars. Id. at 3.

On December 24, 1990, the Chesterfield County police responded to a telephone call from plaintiff to find him armed with an automatic weapon, two magazine rounds, a night-vision scope, and a bulletproof vest. The police obtained a Temporary Detention Order directing that plaintiff be committed to Charter Westbrook Hospital in Richmond, Virginia for psychiatric evaluation. After an initial court-ordered detention, plaintiff voluntarily admitted himself to the hospital, where he remained until January 17, 1991. The record indicates that during and after plaintiff's hospitalization, plaintiff continued to believe that individuals around him were conspiring against him. Id. at 10–14.

On January 30, 1991, a psychiatrist by the name of Dr. Thomas Mathews examined plaintiff and diagnosed him as suffering from a delusional paranoid personality disorder. Dr. Mathews further stated that while plaintiff was not precluded from general employment with USMS, he should be relieved of his weapon and of any duties that would necessitate his carrying a weapon. Defs.' Ex. 4 at 3. When USMS officials explained that one of the essential duties of plaintiff's position was to carry a firearm, Dr. Mathews responded that plaintiff's inability to carry a weapon rendered him medically unfit for duty as a Deputy U.S. Marshal. Defs.' Exs. 5–6. Accordingly, on May 1, 1992, USMS terminated plaintiff on the grounds that he was medically unfit to perform the functions of a Deputy U.S. Marshal.

On May 12, 1992, plaintiff appealed USMS' decision to the Merit Systems Protection Board ("MSPB"). Following a hearing con-

ducted on August 6 and 19, 1992, an MSPB Administrative Judge issued an initial decision that affirmed plaintiff's removal and found that USMS did not discriminate against plaintiff in violation of the Rehabilitation Act of 1973, as amended 29 U.S.C. § 791, *et seq.* Defs.' Ex. 2. In particular, the Administrative Judge accorded more weight to Dr. Mathews' testimony than that of plaintiff's expert witnesses, who maintained that plaintiff suffered from a paranoid personality disorder but was not delusional. The Administrative Judge asserted that plaintiff's experts had examined plaintiff months after his hospitalization and at any rate were "results oriented." *Id.* at 22–24. On December 21, 1993, the MSPB affirmed its initial ruling, and the Equal Employment Opportunity Commission later concurred with the MSPB's findings. Defs.' Exs. 3 and 8.

Plaintiff subsequently commenced this action against USMS, Attorney General Janet Reno, Helen Fahey, the United States Attorney for the Eastern District of Virginia, and Eduardo Gonzalez, the Director of USMS. Plaintiff alleges that the defendants violated sections 501 and 504 of the Rehabilitation Act and the Virginia Human Rights Act, Virginia Code § 2.1–715, by discharging plaintiff and failing to make reasonable accommodations for his disability. Plaintiff seeks the following relief: a declaratory judgment that defendants violated the above statutes and engaged in a conspiracy prohibited under 42 U.S.C. § 1985(3); reinstatement; lost wages and benefits; nominal, general, and compensatory damages; and attorneys' fees and costs.

## II. *Discussion*

In moving to dismiss and/or for summary judgment, defendants make the following assertions: (1) that the Court lacks subject matter jurisdiction over plaintiff's claims un-

der 42 U.S.C. § 1985 and the Virginia Human Rights Act; (2) that defendants USMS, Fahey, and Gonzalez are not proper parties to this action; and (3) that defendants are entitled to summary judgment on plaintiff's remaining claims under the Rehabilitation Act. All of these arguments are valid.

### A. *Plaintiff's Claims Under 42 U.S.C. § 1985 and the Virginia Human Rights Act*

■ As an initial matter, defendants state that plaintiff's claims under 42 U.S.C. § 1985 and the Virginia Human Rights Act should be dismissed because the Rehabilitation Act provides exclusive subject matter jurisdiction over this action. Section 501 of the Rehabilitation Act obligates federal agencies to "provide adequate hiring, placement, and advancement opportunities for individuals with disabilities." 29 U.S.C. § 791(b). Similarly, section 504 of the Rehabilitation Act provides:

No otherwise qualified individual with a disability in the United States ... shall, solely by reason of his or her disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency.

29 U.S.C. § 794(a). The procedural and substantive provisions of Titles VII and VI of the Civil Rights Act of 1964 apply to claims brought under sections 501 and 504 of the Rehabilitation Act, respectively. 29 U.S.C. § 794a(a). Plaintiff has asserted claims under both sections of the Rehabilitation Act.[1]

Defendants submit that the Rehabilitation Act provides the exclusive means of redressing claims of handicap discrimination in federal employment. *See* 29 U.S.C. § 794a(a); *see also Brown v. General Servs. Admin.,*

---

1. Although section 501 of the Rehabilitation Act clearly provides a private cause of action for handicap discrimination claims brought by federal employees, circuit courts have split on whether section 504 similarly provides a private cause of action against the federal government. *Compare, e.g., Johnson v. United States Postal Service,* 861 F.2d 1475, 1477 (10th Cir.1988), *with Morgan v. United States Postal Service,* 798 F.2d

1162, 1164–65 (8th Cir.1986). The United States Court of Appeals for the Fourth Circuit apparently has not addressed this issue. *See Little v. Federal Bureau of Investigation,* 1 F.3d 255 (4th Cir.1993) (federal employee case brought under both sections). The Court therefore presumes that plaintiff may properly bring this action under both sections 501 and 504 of the Rehabilitation Act.

425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976) (Title VII provides exclusive judicial remedy for claims of discrimination in federal employment). Thus, defendants contend that this Court has no subject matter jurisdiction over plaintiff's claims under 42 U.S.C. § 1985 and the Virginia Human Rights Act. In responding to defendants' motion, plaintiff did not address this argument. Since plaintiff apparently does not oppose defendants' motion on these grounds, the Court dismisses plaintiff's claims under 42 U.S.C. § 1985 and the Virginia Human Rights Act.

**B.  Plaintiff's Claims Against Defendants USMS, Fahey, and Gonzalez**

■ Title VII provides that plaintiff may bring his employment discrimination suit under the Rehabilitation Act against "the head of the department, agency, or unit, as appropriate," in his or her official capacity. 42 U.S.C. § 2000e–16(c); see also Johnson v. Burnley, 887 F.2d 471, 475 (4th Cir.1989); DiPompo v. West Point Military Academy, 708 F.Supp. 540, 544 (S.D.N.Y.1989). Defendants acknowledge that plaintiff may therefore bring this action against defendant Reno, who, in her official capacity as Attorney General of the United States, has overall supervisory authority over USMS. Defendants submit, however, that plaintiff's claims against defendants USMS, Fahey, and Gonzalez should be dismissed because these defendants are not proper parties to this action. Again, plaintiff did not respond to this argument.

Although the language of § 2000e–16(c) would permit plaintiff to assert his Rehabilitation Act claims against defendant Gonzalez, the Court agrees that plaintiff may not sue more than one department or agency head in his or her official capacity. Thus, the Court grants defendants' motion on these grounds and dismisses plaintiff's claims against defendants USMS, Fahey, and Gonzalez.

**C.  Plaintiff's Rehabilitation Act Claims**

**1.  Standard of Review**

■ Defendants further contend that they are entitled to summary judgment on plaintiff's claims under the Rehabilitation Act.[2] A moving party is entitled to summary judgment where the record establishes that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir.1994). In considering a summary judgment motion, the Court must view the facts and draw reasonable inferences in a light most favorable to the nonmoving party. Shaw, 13 F.3d at 798 (citing Anderson v. Liberty Lobby, 477 U.S. 242, 255, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986)).

■ To demonstrate a prima facie case of disability discrimination, plaintiff must establish the following: (1) that he is a "disabled" individual; (2) that he is "otherwise qualified" for the Deputy U.S. Marshal position; and (3) that he was removed from his position as a result of his disability. Walders v. Garrett, 765 F.Supp. 303, 308 (E.D.Va. 1991), aff'd, 956 F.2d 1163 (4th Cir.1992) (citations omitted). If plaintiff makes out a prima facie case, the burden shifts to defendants to show that there were "job related" justifications for refusing to accommodate plaintiff, and that accommodating plaintiff would impose an "undue hardship" on their operations. Id. (citations omitted). Thus, in order to prevail on their summary judgment motion, defendants must prove that there are no genuine issues of material fact, and that they are entitled to judgment as a matter of law on plaintiff's Rehabilitation Act claims.

**2.  Whether Plaintiff Is a "Disabled" Individual**

With respect to the first prima facie criterion, the Rehabilitation Act defines a "dis-

---

**2.** Defendants correctly point out that this Court has jurisdiction to review MSPB final decisions under 5 U.S.C. § 7703(b)(2). In reviewing an MSPB final decision, the Court must conduct a record analysis of non-discrimination claims but evaluate any discrimination claims de novo. See, e.g., Rana v. United States, 812 F.2d 887, 888 n. 1 (4th Cir.1987). The Court notes, however, that plaintiff has not specifically requested review of the MSPB final decision in this case. At any rate, because plaintiff's discrimination claims must be assessed de novo, the Court will apply the summary judgment standard set forth in Federal Rule of Civil Procedure 56 and relevant caselaw.

abled" individual as "any person who (1) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) has a record of such an impairment, or (3) is regarded as having such an impairment." 29 U.S.C. § 706(8)(B); *see also Walders,* 765 F.Supp. at 309. The parties agree that plaintiff, who at the very least suffers from paranoid personality disorder, is a "disabled" individual under the Rehabilitation Act.[3]

### 3. Whether Plaintiff Is "Otherwise Qualified" for the Deputy U.S. Marshal Position

■■■ Defendants argue, however, that plaintiff cannot satisfy the second *prima facie* requirement that he be "otherwise qualified" for the Deputy U.S. Marshal position. In determining whether plaintiff is "otherwise qualified," this Court must first consider whether plaintiff can perform the "essential functions" of a Deputy U.S. Marshal. If plaintiff cannot do so, this Court must then evaluate whether any "reasonable accommodation" by defendants would enable plaintiff to perform those functions. *School Bd. of Nassau Cty. v. Arline,* 480 U.S. 273, 287 n. 17, 107 S.Ct. 1123, 1131 n. 17, 94 L.Ed.2d 307 (1987) (citations omitted). Accommodations that would impose "undue financial and administrative burdens" upon USMS are not reasonable. *Id.* (citations omitted).

### a. Whether Plaintiff Can Perform the "Essential Functions" of a Deputy U.S. Marshal

■ Defendants first contend that plaintiff cannot perform the "essential functions" of the Deputy U.S. Marshal position. Defendants submit that, in light of plaintiff's medical history, permitting plaintiff to carry a firearm would pose a "reasonable probability of substantial harm." *Mantolete v. Bolger,* 767 F.2d 1416, 1422 (9th Cir.1985). Because the duties of a Deputy U.S. Marshal include transporting prisoners, providing security for courtrooms, and seizing drug-related assets pursuant to federal drug and forfeiture laws,

carrying a firearm is an "essential function" of the Deputy U.S. Marshal position. Thus, defendants argue that plaintiff's inability to carry a firearm establishes that he cannot perform an "essential function" of a Deputy U.S. Marshal. Indeed, pursuant to USMS medical qualifications, "mental instability or history of a basic personality disorder" disqualify a person for the Deputy U.S. Marshal position. Defs.' Exs. 9–10. Accordingly, defendants assert that plaintiff's paranoid personality disorder disqualifies him altogether for duty as a Deputy U.S. Marshal.

Responding to defendants' contentions, plaintiff points out that expert witnesses disagree as to whether plaintiff suffers from a delusional paranoid personality disorder or merely a paranoid personality disorder. Plaintiff therefore submits that there are genuine issues of material fact as to whether plaintiff suffers from a "basic" personality disorder that would disqualify him for work as a Deputy U.S. Marshal.

This Court agrees with defendants, however, that arguing whether plaintiff is delusional does not raise genuine issues of material fact in this case. Even assuming plaintiff suffers only from a paranoid personality disorder, such an affliction constitutes a "basic" disorder within the meaning of USMS medical qualifications. Additionally, plaintiff's medical history establishes that permitting plaintiff to carry a firearm would pose a "reasonable probability of substantial harm" to plaintiff and to others. Thus, the Court finds that plaintiff cannot carry a firearm or otherwise perform the "essential functions" of the Deputy U.S. Marshal position.

### b. Whether Defendants Could "Reasonably Accommodate" Plaintiff's Disability

■■■ Defendants further assert that they could not "reasonably accommodate" plaintiff's paranoid personality disorder. Defendants argue that, since plaintiff cannot carry a firearm in accordance with Deputy U.S. Marshal requirements, no reasonable accommodation would permit him to return to his former position. Moreover, USMS attempted to locate a vacant administrative position

---

**3.** In his deposition, plaintiff denied that he was at any time mentally disabled. If this statement were true, it would divest this Court of subject matter jurisdiction altogether, since jurisdiction is premised on the Rehabilitation Act.

for plaintiff within the Eastern District of Virginia, but no such positions were available. Defendants contend that, while they were probably obligated to search for a vacant administrative position for plaintiff, they were not required to create a new position for him or locate a position outside of this District. Thus, defendants conclude that they could not "reasonably accommodate" plaintiff, and that plaintiff therefore cannot prove that he was "otherwise qualified" for the Deputy U.S. Marshal position.

In response, plaintiff first alleges that defendants could have "reasonably accommodated" plaintiff's disability by permitting him to work in his former position with repeated follow-up psychiatric treatment. In proposing this alternative, plaintiff refers to Dr. Mathews' testimony that plaintiff could return to general work at USMS while undergoing treatment. Plaintiff further suggests that defendants could have reassigned plaintiff to a vacant administrative position outside of this District, since USMS attempted to locate such a position but later abandoned its search.

This Court agrees that defendants could not "reasonably accommodate" plaintiff's paranoid personality disorder. Although Dr. Mathews did suggest that plaintiff could return to general employment at USMS with ongoing counseling, he never testified that plaintiff could resume his former position and carry a firearm with such follow-up treatment. Defs.' Ex. 8 at 14. Thus, permitting plaintiff to work as a Deputy U.S. Marshal while undergoing treatment would not be a reasonable accommodation of plaintiff's disability. In addition, defendants' unsuccessful endeavor to reassign plaintiff to an administrative position within this District satisfied the Rehabilitation Act's mandate that they attempt to accommodate plaintiff. *See Guillot v. Garrett*, 970 F.2d 1320, 1326–27 (4th Cir.1992); *Carter v. Tisch*, 822 F.2d 465, 467 (4th Cir.1987). Accordingly, it is immaterial whether defendants could have found plaintiff a position outside of this District.

The Court thus finds that plaintiff was not "otherwise qualified" for the Deputy U.S. Marshal position. Because plaintiff therefore cannot demonstrate a *prima facie* case of disability discrimination, defendants are entitled to judgment as a matter of law on plaintiff's Rehabilitation Act claims. Accordingly, the Court grants defendants' motion and enters summary judgment for the defendants on these claims.

### III. *Conclusion*

For the foregoing reasons, the Court sustains defendants' motion to dismiss and/or for summary judgment. The Court dismisses plaintiff's claims under 42 U.S.C. § 1985 and the Virginia Human Rights Act, as well as plaintiff's claims against defendants USMS, Fahey, and Gonzalez. In addition, the Court enters summary judgment in favor of defendant Reno on plaintiff's claims under the Rehabilitation Act.

Let the Clerk send a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.