**Amador RIVERA, Plaintiff,**

v.

**I. Michael HEYMAN, Secretary, Smithsonian Institution, Luis A. Palau, and Edward G. Dolan, Defendants.**

No. 96 Civ. 4489(PKL).

United States District Court, S.D. New York.

Oct. 7, 1997.

Gregory Antollino, New York City, for Plaintiff.

Mary Jo White, United States Attorney for the Southern District of New York (Martin J. Siegel, of counsel), New York City, for Defendants.

## OPINION AND ORDER

LEISURE, District Judge.

Before this Court is defendants' motion for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons stated below, the defendants' motion is granted.

## BACKGROUND

The following facts are taken from the allegations in the complaint,[1] which must, for the purposes of this motion, be taken as true. Plaintiff Amador Rivera ("Rivera") has been employed by the Smithsonian Institution's New York Museum Complex as a security officer since 1979. He began work at the Cooper Hewitt Museum in New York and was promoted to the positions of lead guard, sergeant, and lieutenant, his current rank. Rivera serves as an Assistant Chief of Security of the Office of Protection Services of the Smithsonian's New York Branch, and has so served since 1986. Defendant Luis Palau ("Palau") is the Chief of Security of the Smithsonian in New York and defendant Edward Dolan ("Dolan") served in a supervisory capacity over Rivera.

---

1. On March 23, 1997, following the Defendants' motion to dismiss, Plaintiff submitted its second amended complaint. On April 24, 1997, the Government stipulated to the filing of the second amended complaint. For purposes of this motion, the Court is considering the facts as alleged in the second amended complaint.

From 1979 through 1991, Rivera was a successful employee of the Smithsonian. He had received favorable evaluations throughout his career; his last evaluation, authored in 1993 by Dolan, rated him as "highly successful" (the second highest rating in the Smithsonian evaluation system). In 1991, however, Rivera revealed to Palau that he was infected with the Human Immunodeficiency Virus (HIV). Plaintiff claims that this revelation led to marked change in the way Palau, Dolan, and others treated him.

Rivera provided to both Palau and the Employee Assistance Program (EAP) documentation of his illness and his need to work a reduced schedule that could accommodate his condition. According to Rivera, Palau never accommodated his work needs, forcing him to use his accrued compensatory time to modify his schedule. This led Palau to harass Rivera by closely monitoring his breaks, never allowing Rivera two consecutive days off, and seeming incredulous when Rivera took a sick day. Finally, in December 1993, Palau placed Rivera on leave restriction,[2] which led plaintiff to file a complaint with the Office of Equal Opportunity and Minority Affairs (OEMA) of the Smithsonian. Palau subsequently withdrew the leave restriction, but Rivera claims the harassment continued. Plaintiff alleges that Palau scrutinized Rivera's work and took every opportunity to single out Rivera for criticism. Palau insulted Rivera because of his illness, calling him "useless," and then Palau revealed to another Smithsonian employee that Rivera had HIV.

Rivera's complaint also alleges that Palau directed ethnic slurs at plaintiff. Rivera, who often wore multi-cultural attire to work, claims that Palau said that Rivera was not "Puerto Rican", that Rivera "thought he was a Muslim," and that Rivera "dressed like a Palestinian." Plaintiff complained once again to the OEMA.

By this time, Rivera was on a reduced schedule that allowed him to have every other Monday free so that he could see his doctor. Rivera's doctor was available only two days per week, one of them being Monday. Rivera alleges that Palau soon thereafter changed Rivera's schedule so that Rivera worked Mondays. Rivera further claims that once he began to take medical leave on Mondays, Palau harassed him and accused him of simply taking long weekends. Palau denied Rivera's further requests for an accommodation of his schedule, so Rivera requested, through the OEMA, a transfer to Audobon Terrace in Manhattan ("Audobon"), another Smithsonian facility. Plaintiff alleges that Palau agreed to a transfer, but sent him to work at the Smithsonian's research station, located in a remote area of the Pelham section of the Bronx. Rivera claims that the research station consists of a series of separate buildings, and his work required him to go outside throughout the day, which worsened his condition.

Rivera reported this situation to the OEMA, and soon thereafter, Palau transferred Rivera to Audobon on a temporary basis. Shortly after arriving at Audobon, Dolan sent him back to the Bronx facility. Rivera allegedly spoke with Dolan in hopes of remaining at Audobon and, in order to make Dolan understand his needs, revealed his medical condition.[3] This effort was to no avail, as Dolan reassigned Rivera to the Bronx station.

Following numerous requests by Rivera to return to Audobon, Palau and Dolan did transfer him to Audobon, but only on a temporary basis. Then, after a period of administrative leave, the Smithsonian reassigned Rivera to the Bronx station once again. Rivera alleges that he made numerous requests for a transfer, specifically to the Museum of the American Indian at Bowling Green, but that Palau and Dolan refused his requests, stating each time that such a move was "impossible."[4]

---

**2.** The complaint does not explain the meaning of "leave restriction," so the Court assumes for purposes of the instant motion that Palau somehow hindered Rivera in his desire to utilize accrued leave.

**3.** Rivera alleges that Dolan already knew of his HIV status, and had divulged the information to at least one third party.

**4.** The Smithsonian has since transferred Rivera to Bowling Green. Plaintiff intimates that the filing of the present lawsuit played a factor in his

In addition to the lack of accommodation alleged throughout his complaint, Rivera claims that the defendants denied him the opportunity to participate in several training events for the Office of Protective Services. He points specifically to an event held in Huntsville, Alabama, in which Palau allegedly refused Rivera a place in the class despite documentation from Rivera's doctor that his illness would in no way interfere with his ability to attend.

Plaintiff alleges that the defendants' actions are in violation of the Federal Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.;* Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C.2000e–3 *et seq.;* the New York State Human Rights Law, § 296 of the Executive Law of the State of New York; the City of New York Human Rights Law, § 8–107 of the Administrative Code of the City of New York; and the Federal Tort Claims Act, 28 U.S.C.A. § 2671. Rivera seeks compensatory damages of not less than $800,000,[5] punitive damages, injunctive relief, and cost of suit and attorney's fees.

## DISCUSSION

### I. *Standards for Judgment on the Pleadings*

"Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 642 (2d Cir.1988). "In deciding a Rule 12(c) motion, we apply the same standard as that applicable to a motion under Rule 12(b)(6)." *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994). Under the Rule 12(b)(6) standard, a court "must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant; it should not dismiss the complaint 'unless it appears beyond

a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Id.* (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)); *See also Kaluczky v. City of White Plains,* 57 F.3d 202, 206 (2d Cir.1995). In deciding a motion for judgment on the pleadings, a court may consider the pleadings and exhibits attached thereto, statements or documents incorporated by reference in the pleadings, matters subject to judicial notice, and documents submitted by the moving party, so long as such documents are either in the possession of the party opposing the motion or were relied upon by that party in its pleadings. *See Brass v. American Film Techs., Inc.,* 987 F.2d 142, 150 (2d Cir.1993).

### II. *Plaintiff's Claims Under the Rehabilitation Act*

#### A. *Applicable Provisions*

Rivera has raised four different causes of action under the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* ("Rehabilitation Act"). Section 791(b)[6] of the Rehabilitation Act is titled "Employment of individuals with disabilities," and requires "[e]ach department, agency, and instrumentality (including the United States Postal Service and the Postal Rate Commission) in the executive branch" to hire, place and advance persons with disabilities. 29 U.S.C. § 791(b). Section 794a(a)(1) of the Rehabilitation Act, added in 1978, provides that the rights available to employees under section 717 of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e–16, are available to individuals aggrieved by violations of section 791. *Id.* § 794a(a)(1).

A cause of action may also arise from violations of section 504 of the Rehabilitation Act. That provision provides in pertinent part:

---

transfer, but that is not an issue before this Court for purposes of the instant motion.

**5.** In his prayer for relief, Rivera claims $800,000 as compensatory damages. In each cause of action, however, he seeks damages specific to that claim.

**6.** The Rehabilitation Act has its own set of section numbers that have changed upon codification in the United States Code ("U.S.C."). Throughout this opinion, the two sets of section designations are used interchangeably. *See, e.g.,* section 501 of the Rehabilitation Act corresponds to 29 U.S.C. § 791, and section 504 of the Rehabilitation Act corresponds to 29 U.S.C. § 794.

No otherwise qualified individual with a disability in the United States, as defined in Section 706(8) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

*Id.* § 794(a). Section 794a(a)(2) makes the rights provided to individuals under Title VI, 42 U.S.C. § 2000d, available to any person who alleges a violation of § 794. 29 U.S.C. § 794a(a)(2).

### B. *Is Plaintiff Disabled?*

■ The Rehabilitation Act provides protection to one who is classified as an "individual with disabilities," under section 706(8). For the purposes of sections 791 and 794, this is "any person who (i) has a physical or mental impairment which substantially limits one or more of a person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment." 29 U.S.C. § 706(8)(B). "Physical impairment" is defined as "any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive, digestive, genito-urinary; hemic and lymphatic; skin; and endocrine." 45 C.F.R. § 84.3(j)(2)(i)(A). Clearly, due to the way HIV manifests in the individual's blood, the infection is a "physical impairment."

" 'Major life activities' means functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 45 C.F.R. § 84.3(j)(2)(ii). Whether HIV substantially limits a major life activity is more questionable. HIV does not appear to fall into any of the categories listed within the regulation. However, use of the phrase "such as" in the regulation indicates that the list is illustrative as opposed to exhaustive. Since the Rehabilitation Act is a remedial statute, the Act and the regulations promulgated under it are to be interpreted broadly.

*See Heilweil v. Mount Sinai Hospital,* 32 F.3d 718, 722 (2d Cir.1994). Other courts have held that procreation and sexual contact are major life activities and that the nature of the HIV infection substantially limits an infected individual from engaging in the activities. *See Doe v. District of Columbia,* 796 F.Supp. 559, 568 (D.D.C.1992) (HIV-positive individual within protected class of Rehabilitation Act); *See also Doe v. Kohn Nast & Graf P.C.,* 862 F.Supp. 1310, 1321 (E.D.Pa. 1994) (HIV-positive individual within protected class of Americans with Disabilities Act, 42 U.S.C. § 12101a(2)). Giving the regulation a broad reading, this Court agrees that HIV infection affects major life activities. Therefore, Rivera is a disabled individual under the Rehabilitation Act.

Section 706(8)(D) further provides that, for the purposes of section 794, "individual with disability" does not include:

an individual who has a currently contagious disease or infection and who, by reason of such disease or infection, would constitute a direct threat to the health and safety of other individuals, and who, by reason of the currently contagious disease or infection, is unable to perform the duties of the job.

*Id.* § 706(8)(D). Neither party addressed this provision in its brief, most likely because each arrived at the same conclusion as the Court: section 706(8)(D) does not exclude Rivera from protection under § 794. When plaintiff's position as a security officer at the Smithsonian is considered in conjunction with his HIV status, it becomes evident that he neither poses a threat to the health and safety of others nor is unable to perform the functions of his job. HIV is transmitted most commonly through sexual contact, shared needles, and blood transfusions. None of these situations is part of the duties of a security officer. Moreover, Rivera has demonstrated that he can perform those tasks that are required of him, as evidenced by his continued employment with the Smithsonian.

### C. *Which Provisions of the Rehabilitation Act are Available to Federal Employees?*

■ There has been some debate on whether to apply § 791, § 794, or both, to

employment-related suits filed by federal employees. *See, e.g., Hogarth v. Thornburgh,* 833 F.Supp. 1077, 1083 (S.D.N.Y.1993); *Barth v. Gelb,* 2 F.3d 1180, 1183 (D.C.Cir. 1993). Most courts that have decided the issue have held that Section 791 is the appropriate provision under which federal employees shall sue. *See Hogarth,* 833 F.Supp. at 1083 (gathering cases that have decided the issue); *Johnston v. Horne,* 875 F.2d 1415, 1420–21 (9th Cir.1989); *Johnson v. United States Postal Service,* 861 F.2d 1475, 1477–78 (10th Cir.1988); *Boyd v. United States Postal Service,* 752 F.2d 410, 413 (9th Cir.1985); *McGuinness v. United States Postal Service,* 744 F.2d 1318, 1321 (7th Cir.1984); *Barth,* 2 F.3d at 1183 ("We have 'strongly suggested' that litigants proceed under section 501"). There are other courts, however, that have determined that the protections for disabled federal employees under sections 791 and 794 overlap. *See Morgan v. United States Postal Serv.,* 798 F.2d 1162, 1164–65 (8th Cir. 1986), *cert. denied,* 480 U.S. 948, 107 S.Ct. 1608, 94 L.Ed.2d 794 (1987); *de la Torres v. Bolger,* 781 F.2d 1134, 1135–36 (5th Cir. 1986); *Smith v. United States Postal Serv.,* 742 F.2d 257, 259–60 (6th Cir.1984). The United States Court of Appeals for the Second Circuit has yet to address the issue. *Hogarth,* 833 F.Supp. at 1083.

In *DiPompo v. West Point Military Academy,* 708 F.Supp. 540 (S.D.N.Y.1989), Judge Michael B. Mukasey presented a detailed analysis of the interaction of sections 791 and 794, based on the amendments to the Rehabilitation Act and the legislative history of the provisions. Based on his review, Judge Mukasey determined that " § 501 is a federal employee's *exclusive* remedy for employment discrimination based on handicap, and that §§ 501 and 504 do not provide overlapping protection for federal employees who allege employment discrimination based on handicap." *Id.* at 545 (emphasis added). The Court added that § 791 "was intended to become one of the many resources a federal employee has in pursuing an employment discrimination claim, while 504 was not." *Id.* at 546.

The logic of *McGuinness* concerning the applicability of § 794 to employment-related suits by federal employees is also persuasive. Writing for the Seventh Circuit, Judge Posner stated that "it is unlikely that Congress, having specifically addressed employment of the handicapped by federal agencies (as distinct from employment by recipients, themselves nonfederal, of federal money) in section 501, would have done so again a few sections later in section 504." *McGuinness,* 744 F.2d at 1321. Accordingly, this Court is in agreement with *McGuinness, DiPompo,* and the majority of courts that have considered the issue. Section 791 provides the exclusive remedy to Rivera, as a federal employee, under the Rehabilitation Act.

**D.** *Is the Smithsonian in the Executive Branch?*

■ The issue next facing the Court is whether the Smithsonian is in the executive branch, as required for Rivera to state a claim under § 791. Because § 791 is applicable only to each "department, agency, and instrumentality ... *in the executive branch,*" 29 U.S.C. § 791 (emphasis added), the Court must determine if § 791 reaches the Smithsonian. A logical starting point is Section 794a(a)(1), which provides that individuals aggrieved by violations of § 791 are given the remedies, procedures, and rights set forth in section 717 of Title VII,[7] titled "Nondiscrimination in Federal Government employment."

Section 717 makes unlawful any discrimination based on race, color, religion, sex, or national origin within certain specified governmental units, including "executive agencies as defined in section 105 of title 5, United States Code." 42 U.S.C. § 2000e–16(a). Since 794a(a)(1) incorporates section 717 of Title VII into the Rehabilitation Act, individuals who sue under the Rehabilitation Act are given the same protections as those who sue directly under Title VII. These protections are necessarily limited by the language of § 791 providing that the provision is

---

**7.** As with the Rehabilitation Act, the provisions of Title VII are numbered within the Act itself. Upon codification, these numbers changed.

Within the Opinion, the annotations are used interchangeably. *See, e.g.,* section 717 and 42 U.S.C. § 2000e–16 refer to the same provision.

only applicable within the executive branch. Therefore, the provisions of Title VII, § 717 incorporated into the Rehabilitation Act are only those which relate to the executive branch.

The Court finds that "in the executive branch" in § 791 is synonymous with "executive agency" in Title VII, § 717. If this were not true, several anomalous situations would exist. If "in the executive branch" were broader than "executive agency" in Title VII, § 794a would grant to employees remedies that did not exist. For example, if an entity were deemed to be "in the executive branch," then § 794a would grant individuals employed by that entity rights under § 717. But if the same entity were deemed outside the definition of "executive agency," and thus not covered by § 717, the individual would have gained nothing. Conversely, if "executive agency" were held to encompass more organizations than those "in the executive branch," disabled federal workers would have fewer protections than non-disabled employees, a problem which § 794a was designed to remedy.

Title VII, § 717 makes explicit reference to 5 U.S.C. § 105, which defines "Executive agency" as "an Executive department, a Government corporation, and an independent establishment." An "independent establishment" is defined within the Code as "an establishment in the executive branch." 5 U.S.C. § 104. The Smithsonian is neither an executive department nor a government corporation, 5 U.S.C. §§ 101 and 103. Therefore, for Rivera to maintain his suit under § 791, the Smithsonian must be an independent establishment within the executive branch.

In order to determine the status of the Smithsonian within the federal government, some basic information about the structure of the Smithsonian must be considered. The Smithsonian is an instrumentality of the United States, established through the generosity of James Smithson, who bequeathed all his property to the United States to found an "establishment for the increase and diffusion of knowledge among men." 20 U.S.C. § 41. An Act of Congress constituted the Smithsonian from the President, Vice President, Chief Justice of the Supreme Court, and heads of the executive departments. *Id.* The Board of Regents, composed of the Vice President, the Chief Justice of the Supreme Court, six members of Congress, and nine other citizens selected by joint resolution of Congress, oversee the operation of the Smithsonian. *Id.* § 42. The Smithsonian receives approximately seventy-five percent of its funding from Congressional appropriation, *see Expeditions Unlimited, Etc. v. Smithsonian Institution,* 566 F.2d 289, 296 n. 4 (D.C.Cir.1977), while its private endowment provides the balance of the funds required for its operation. *See Id.* at 296 n. 3. Most employees of the Smithsonian, like Rivera, are federal civil service employees, *see Dong v. Smithsonian Institution,* 878 F.Supp. 244, 248 (D.D.C.1995), although some are paid directly from the Smithsonian's trust funds.

Whether the Smithsonian falls within the executive branch for the purposes of section 791 presents a case of first impression for this Court. This type of inquiry is highly contextual and incapable of resolution using "bright line rules," requiring consideration of the specific entity and statutory language at issue. *See Cotton v. Heyman,* 63 F.3d 1115, 1121 (D.C.Cir.1995); *See also Dong,* 878 F.Supp. at 248. Looking at the structure of the Smithsonian, there are strong indications that it is not in the executive branch. *Cf. Expeditions Unlimited,* 566 F.2d at 296 (holding that for purposes of the Federal Tort Claims Act (FTCA) the Smithsonian is an independent establishment of the United States); *Dong,* 878 F.Supp. at 245 (Smithsonian is subject to the Freedom of Information Act (FOIA) as an "authority of the United States," although FOIA applies specifically to establishments in the executive branch of government); *Cotton v. Heyman,* Civil Action No. 94–0963 (D.D.C.1996) (not published in F.Supp.) ("not clear that Smithsonian can be classified as an 'executive agency'" under section 717).

The Board of Regents of the Smithsonian includes members from all three branches of government: the Vice President, the Chief Justice of the Supreme Court, and six members of Congress. The Congress also direct-

ly appoints the nine civilian members of the Board. In sum, of the seventeen members of the Board of Regents, responsible for the administration of the Smithsonian, fifteen are either members of Congress or are appointed by Congress.

Based on this organization, the Smithsonian could arguably be a legislative entity. Regardless of where the Smithsonian specifically lies within the government, it is at least clear that the Executive does not have the control over the Smithsonian necessary to classify the Institution as "in the executive branch" for purposes of the Rehabilitation Act. It therefore follows that section 791 does not apply to the Smithsonian, and Rivera, whose exclusive remedy as a federal employee is § 791, may not maintain his suit under the Rehabilitation Act. Thus, taking all of the allegations made by Rivera as true, the causes of action under the Rehabilitation Act are necessarily dismissed, because Rivera can prove no set of facts which would allow relief.[8]

### III. *Plaintiff's Claim Under Title VII*

■ Rivera alleges that he made a complaint of discrimination under Title VII addressed to the defendants in April 1994. He further claims that the defendants unlawfully retaliated against him for making his complaint, in violation of Title VII. At the outset, the Court notes that Title VII makes it "an unlawful employment practice" for an employer to discriminate against an employee because of the employee's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Section 704(a) of Title VII provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge ... under this subchapter.

42 U.S.C. § 2000e–3.

In order to make a *prima facie* case for a retaliation claim, a plaintiff must show: (1) he was engaged in an activity protected under Title VII; (2) the employer was aware of plaintiff's participation in the protected activity; (3) the employer took an adverse action against the plaintiff based on the activity; and (4) a causal connection existed between the plaintiff's protected activity and the adverse action taken by the employer. *See Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1178 (2d Cir.1996); *See also Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033, 1039 (2d Cir.1993); *Sumner v. United States Postal Service*, 899 F.2d 203, 208–09 (2d Cir. 1990); *Manoharan v. Columbia University College of Physicians and Surgeons*, 842 F.2d 590, 593 (2d Cir.1988).

■ All of the prongs of the *prima facie* case are premised upon the plaintiff engaging in a "protected activity." To meet the requirement of a "protected activity," a plaintiff must oppose an unlawful employment practice. *See Reed*, 95 F.3d at 1178. In order to satisfy this test, an employee " 'need not establish that the conduct he opposed was in fact a violation of Title VII,' but only that he had a 'good faith, reasonable belief' that the underlying employment practice was unlawful." *Reed*, 95 F.3d at 1178 (quoting *Manoharan*, 842 F.2d at 593); *see also Cosgrove*, 9 F.3d at 1039, *Sumner*, 899 F.2d at 209. A good faith mistake, either of fact or law, regarding the legality of the employer's conduct will not strip the plaintiff of Title VII protection against retaliation. *Iannone v. Frederic R. Harris, Inc.*, 941 F.Supp. 403, 410 (S.D.N.Y.1996); *see also Moyo v. Gomez*, 32 F.3d 1382, 1385 (9th Cir.1994). The reasonableness of the plaintiff's belief that an unlawful employment practice occurred must be assessed according to an objective standard. This standard must be one that makes allowance for the limited knowledge possessed by most Title VII plaintiffs about the bases of their claims. *See Moyo*, 32 F.3d at 1385–86.

For Rivera's retaliation claim to stand, he must have had a "good faith, reasonable belief that the underlying challenged actions of

---

**8.** While this Court is not unsympathetic to the plight of Rivera in light of this holding, it is for the Congress, and not the courts, to expand or clarify Section 501 of the Rehabilitation Act to include all federal employees, and not just those in the executive branch.

the employer" are violative of Title VII. *Cosgrove,* 9 F.3d at 1039; *Manoharan,* 842 F.2d at 593. Rivera bases his retaliation claim on the complaint that he lodged in April 1994. Upon examination of the complaint, it is clear that Rivera only alleged discrimination on the basis of handicap, specifically his HIV positive status. Although the complaint form has designated areas to allege discrimination on the basis of race, color, religion, or national origin, all of which are proscribed by Title VII, Rivera did not claim any discrimination on these grounds in his complaint. Although the Court does not hold Rivera to the standard of a lawyer in determining the reasonableness of his belief, but only to the standard of a plaintiff with limited knowledge of Title VII, *Moyo,* 32 F.3d at 1385–86, a belief that the conduct underlying the April 1994 complaint violated Title VII is not reasonable. Quite simply, the complaint alleged discrimination only on the basis of disability, which is not covered at all by Title VII. In his second amended complaint, Rivera argues that he complained about disparaging ethnic comments. The complaint he filed, however, mentions nothing of ethnic discrimination. And while the Court is certain that Rivera believed that the Smithsonian had acted illegally in some capacity, any discussion, knowledge, or familiarity with Title VII would show that Title VII applies only to discrimination based on characteristics other than disability.

Taking everything that Rivera alleges in his complaint as true, Rivera cannot show that his April 1994 complaint was a "protected activity" under Title VII. Accordingly, there is no possibility that Rivera may satisfy the *prima facie* requirements to state a cause of action for retaliation and his claim under Title VII must be dismissed.

**9.** Rivera alleges violation of § 296 of the Executive Law of the State of New York and § 8–107 of the Administrative Code of the City of New York.

**10.** *Brown* also bolsters this Court's holding that § 791 is the exclusive provision applicable to federal employees who seek redress under the Rehabilitation Act. § 794a gives Title VII remedies to individuals subject to violations of § 791, and gives Title VI remedies to individuals subject to violations of § 794. A holding that § 794 is

## IV. Plaintiff's Claims under the Human Rights Laws of the State of New York and the City of New York

■ Rivera claims four causes of action under the Human Rights Laws of the State of New York and the City of New York. Rivera brings these causes of action not against the Smithsonian, but against Palau and Dolan in their individual capacities. In these claims, the plaintiff alleges that defendants Palau and Dolan discriminated against him on the basis of his disability and that the same defendants took retaliatory measures against him based on his opposition to this discrimination. Because the City and State Human Rights Laws upon which Rivera seeks to state a claim are substantively similar, the causes of action will be analyzed together.[9]

In *Brown v. General Services Administration,* 425 U.S. 820, 835, 96 S.Ct. 1961, 1969, 48 L.Ed.2d 402 (1976), the Court held that section 717 of Title VII "provides the exclusive judicial remedy for claims of discrimination in federal employment." However, Title VII does not proscribe discrimination on the basis of disability, which is the basis for Rivera's claim. Rather, section 501 of the Rehabilitation Act (29 U.S.C. § 791) protects disabled federal workers from discrimination, and § 794a provides that individuals aggrieved by violations of § 791 are given the rights set forth in section 717 of Title VII.[10] Logically, the holding of *Brown* is applicable to federal employees who claim discrimination on the basis of disability, and § 794a provides the exclusive judicial remedy for Rivera's claim. *See DiPompo,* 708 F.Supp. at 547; *see also Lassiter v. Reno,* 885 F.Supp. 869, 872–73 (E.D.Va.1995), *aff'd,* 86 F.3d 1151 (4th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 766, 136 L.Ed.2d 712 (1997) (dismissing state human rights claims made by disabled federal employee).[11]

available to federal employees would therefore be inconsistent with *Brown.*

**11.** In *Lassiter,* the court allowed plaintiff to proceed under both §§ 501 and 504 of the Rehabilitation Act. This Court determines, *supra* at 937, that a federal employee may bring a claim covered by the Rehabilitation Act only under § 501. *Lassiter* is cited only as support for the proposition that the Rehabilitation Act provides the ex-

Plaintiff contends that Palau and Dolan may be sued in their individual capacities under the human rights laws. The plaintiff in *DiPompo* similarly sought to bring claims under the Rehabilitation Act and against individual defendants under the New York Human Rights Law. *See* 708 F.Supp. at 547. Judge Mukasey dismissed the human rights claims, finding that if the plaintiff were allowed to proceed, he could circumvent Brown's holding that a federal employee's sole remedy for employment discrimination is section 717 of Title VII. *See id.* This Court concurs with *DiPompo* on this point. Accordingly, Rivera may not sue defendants Palau and Dolan individually, and the discrimination claims under the state and local human rights laws are dismissed.

## V. *Plaintiff's Claim for Invasion of Privacy*

■ Rivera's final cause of action alleges that he has suffered the tort of invasion of privacy, because defendants Palau and Dolan each told third parties of Rivera's HIV status without his consent. Rivera brings this claim against the United States under the FTCA, 28 U.S.C. §§ 1346, 2671–2680, and against Palau and Dolan individually. In his second amended complaint, Rivera cites to § 2784 of the Public Health Law of the State of New York as the basis for his claim.

The FTCA has several jurisdictional requirements that a plaintiff must meet before the United States consents to suit in federal court. *See* 28 U.S.C. § 2675. Specifically, § 2675(a) states:

> An action shall not be instituted upon a claim against the United States for money damages ... caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate federal agency.

Section 2675(b) provides:

> Action under this section shall not be instituted for any sum in excess of the amount

of the claim presented to the federal agency. . . .

The Second Circuit has interpreted the language of 2675(a) to "require that the Notice of Claim provide sufficient information both to permit an investigation and to estimate the claim's worth." *Keene Corp. v. United States,* 700 F.2d 836, 842 (2d Cir.1983). The second Circuit also has held that § 2675(b) includes a requirement that the request for damages in the administrative claim "state a sum certain." *Adams by Adams v. United States Dep't of Housing and Urban Development,* 807 F.2d 318, 320–21 (2d Cir.1986); *See also Keene Corp.,* 700 F.2d at 841–42; *Marchese v. United States,* 781 F.Supp. 241, 245 (S.D.N.Y.1991). Furthermore, "the requirement that the claim state a specific dollar sum ... is jurisdictional and cannot be waived." *Adams by Adams,* 807 F.2d at 321.

In April 1994, Rivera filed an employment discrimination claim with the Smithsonian. In that document, he complained that individuals (he did not mention Palau and Dolan by name) told others about his HIV status. The parties disagree as to the requirements of § 2675(a). Plaintiff argues that his April 1994 discrimination complaint serves as a proper notice of claim to the Government. The Government contends that Rivera has not exhausted his administrative remedies, and has produced evidence that Rivera has never filed a *tort* claim with the Smithsonian.[12] Because Rivera's cause of action is precluded on other grounds, this Court need not determine if the filing of an employment discrimination claim gives notice to the proper federal agency, as required by § 2675(a).

Even assuming *arguendo* that Rivera's April 1994 complaint serves as a proper notice of claim, he still does not meet the standard of § 2675(b) that his administrative claim state a sum certain. After examination of Rivera's complaint, it is clear that not only does Rivera fail to state a sum certain as damages, but he fails to mention any monetary value at all. The Smithsonian had no ability to properly estimate the worth of the claim, which is one of the principal concepts behind § 2675. Because Rivera has failed to

---

clusive remedy to federal employees subject to discrimination based on disability.

**12.** 28 C.F.R. § 14.1 *et seq.* outline the procedures for compliance with § 2675.

comply with the requirements of § 2675, this Court lacks jurisdiction to hear his cause of action against the United States, and that portion of the claim is dismissed.

 Rivera also brings this claim under New York law against Palau and Dolan as individuals. This Court determines, *supra* at 940–941, that Title VII is Rivera's only remedy for employment discrimination, and dismisses claims under the local human rights laws. The present claim, however, is not for employment discrimination, but for the tort of invasion of privacy. In *Westfall v. Erwin,* 484 U.S. 292, 300, 108 S.Ct. 580, 585–86, 98 L.Ed.2d 619 (1988), the Supreme Court held that a federal employee is immune from state-law tort liability only upon a showing that the challenged action was within the outer perimeter of his or her duties and was discretionary in nature. In response to this ruling, Congress enacted the Federal Employees Liability Reform and Tort Compensation Act, 28 U.S.C. § 2679, which states in section (d)(1) that:

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

At this time, there has been no certification by the Attorney General that defendants Palau and Dolan were acting within the scope of their duties when the alleged tort occurred.

This cause of action, however, arises under New York law, and this Court has only supplemental jurisdiction over the claim. 28 U.S.C. § 1367(a).[13] Since the Court dismisses all other claims by Rivera, the situation exists where the Court could be deciding a New York state claim. 28 U.S.C. § 1367(c) provides that "the district courts may decline to exercise supplemental jurisdiction over a claim if ... (3) the district court has dismissed all claims over which it has original jurisdiction...." As this motion has occurred at an early stage in the proceedings (by stipulation, the Government has yet to file its answer to the second amended complaint), this Court declines to exercise jurisdiction over Rivera's tort action against Palau and Dolan, and the claim is dismissed. *See Harsco Corp. v. Segui,* 91 F.3d 337, 348 (2d Cir.1996) (district court properly declined to exercise supplemental jurisdiction over state claims when federal claims dismissed early in the proceedings).[14]

## CONCLUSION

For the reasons stated above, the defendants motion for judgment on the pleadings is HEREBY GRANTED.

**SO ORDERED.**

---

**13.** Because there has been no certification by the Attorney General, the United States is not a defendant in this cause of action, which means that a jurisdictional requirement of the FTCA has not been met. 28 U.S.C. § 1346(b)(1). Also, there has been no showing of diversity among the parties. 28 U.S.C. § 1332.

**14.** The Court is well aware that if Rivera files his claim in state court, the case may return to this Court upon certification by the Attorney General, or upon petition of the defendant(s) following the denial of certification. 28 U.S.C. § 2679(d). The Court would then make the determination as to whether Palau and Dolan acted within the scope of their employment, and therefore whether to substitute the United States as defendant. Until the Court is called upon to make this determination, it declines to do so.