Amador RIVERA, Plaintiff–Appellant,

v.

I. Michael HEYMAN, Secretary, Smithsonian Institution, Luis A. Palau and Edward G. Dolan, Defendants–Appellees.

Docket 97–9316.

United States Court of Appeals,
Second Circuit.

Argued May 15, 1998.

Decided Sept. 16, 1998.

Gregory Antollino, New York City, for Plaintiff–Appellant.

Martin J. Siegel, Assistant United States Attorney, New York City (Mary Jo White, United States Attorney for the Southern District of New York, Steven M. Haber, Assistant United States Attorney, on the brief), for Defendants–Appellees.

BEFORE: CARDAMONE, McLAUGHLIN, and JACOBS, Circuit Judges.

JACOBS, Circuit Judge.

Plaintiff–Appellant Amador Rivera, a long-time employee of the Smithsonian Institution, contends that his employer discriminated against him by reason of his disability, in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* (1994), retaliated against him for complaining about it, and discriminated on other grounds under other statutes as well. This appeal presents the question (among others) as to whether the Smithsonian is subject to section 501 of the Rehabilitation Act, 29 U.S.C. § 791 (1994). The United States District Court for the Southern District of New York (Leisure, *J.*) dismissed the complaint pursuant to Federal Rule of Civil Procedure 12(c) after concluding, *inter alia,* that section 501 of the Rehabilitation Act provides the sole remedy for federal employees alleging employment discrimination based on a disability, and that section 501 is inapplicable to the Smithsonian Institution because the Smithsonian is not "in the executive branch." *See Rivera v. Heyman,* 982 F.Supp. 932, 936–39 (S.D.N.Y. 1997). Because of a change in the law during the pendency of this appeal, it is necessary to reverse part of the district court's judgment.

Rivera was hired by the Smithsonian in 1979, and by 1986 had risen to become Assistant Chief of Security in the New York branch of the Smithsonian's Office of Protection Services. According to the allegations of the Second Amended Complaint (which for these purposes are taken as true), Rivera encountered no dissatisfaction with his work until 1991, when Rivera advised his then-supervisor that he was infected with HIV. The complaint alleges that thereafter (and by reason, variously, of discrimination or retaliation) Rivera's supervisors and others at the Smithsonian made difficulties about allowing Rivera medical leave; unreasonably refused to adjust Rivera's work schedule to accommodate his clinic visits; paid heightened critical attention to Rivera's paperwork; refused to provide Rivera with evaluations of his work; made derogatory remarks about Rivera's medical condition and groups of persons assumed to be infected with HIV; ridiculed the multicultural apparel Rivera liked to wear; denied Rivera's requested transfer to another Smithsonian location in New York, and then transferred him to a facility at a location inconvenient for Rivera's commute; denied Rivera the opportunity to attend a training event; and disclosed Rivera's medical condition, without his consent, to one or more fellow employees and to one or more of Rivera's supervisors.

The Second Amended Complaint asserts ten causes of action, and requests injunctive relief, punitive damages, and compensatory damages of $800,000. Rivera claims that the Smithsonian (A) violated the Rehabilitation Act by (i) failing to accommodate his disability, (ii) discriminating against him on the basis of his disability, (iii) subjecting him to a hostile work environment because of his disability, and (iv) retaliating against him for making discrimination complaints in December 1993 and April 1994; and (B) violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1994), by retaliating against him for making a Title VII discrimination complaint in April 1994. As to the other defendants, Rivera alleges that two of his supervisors (Luis Palau and Edward Dolan) discriminated against him on the basis of his disability, and retaliated against him for making discrimination complaints, in violation of the Human Rights Laws of the City of New York, *see* N.Y. City Admin.Code § 8–

107, and the State of New York, *see* N.Y.Exec.Law § 296 (McKinney 1993); and asserts a claim under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* (1994), against Palau, Dolan, and the Smithsonian on the ground that Palau and Dolan revealed Rivera's HIV status to third parties without his consent, acts alleged to constitute an invasion of privacy in violation of § 2784 of the Public Health Law of the State of New York, N.Y.Pub. Health Law § 2784 (McKinney 1993).

Defendants moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). The district court granted the motion, *see Rivera v. Heyman,* 982 F.Supp. at 942, and Rivera now appeals.

### Discussion

 We review *de novo* the district court's grant of judgment on the pleadings. *Sheppard v. Beerman,* 94 F.3d 823, 827 (2d Cir.1996). We therefore accept all allegations in the complaint as true, draw all inferences in favor of the plaintiff, and will affirm only if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (citation omitted).

### A. Section 501 of the Rehabilitation Act.

Rivera's Rehabilitation Act claims are premised upon his HIV-positive status. The district court found that HIV infection is an impairment that "substantially limits . . . major life activities," and that Rivera is therefore "disabled" within the meaning of the Rehabilitation Act, 29 U.S.C. § 706(8)(B). *See Rivera,* 982 F.Supp. at 936. The Supreme Court recently confirmed that HIV infection is a disability under the Americans With Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.* (1994), which defines "disability" in virtually the same terms as the Rehabilitation Act. *See Bragdon v. Abbott,* — U.S. —, —, 118 S.Ct. 2196, 2206–07, 141 L.Ed.2d 540 (1998).

As a federal employee, Rivera has no remedy for employment discrimination under the ADA. *See* 42 U.S.C. § 12111(5)(B). His sole claim for discrimination on the basis of disability is under the Rehabilitation Act, if

anywhere. Section 501 of the Rehabilitation Act establishes a program within the federal government to encourage the employment of individuals with disabilities, and applies to "[e]ach department, agency, and instrumentality (including the United States Postal Service and the Postal Rate Commission) *in the executive branch.*" 29 U.S.C. § 791(b) (1994) (emphasis added). There was no private right to enforce section 501 until Congress supplied a private remedy in 1978 by amending the statute to provide that the remedies set forth in section 717 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16, were available "with respect to any complaint under [section 501] of this title." 29 U.S.C. § 794a(a)(1) (1994).

The district court dismissed all of Rivera's section 501 claims on the ground that the Smithsonian is not subject to the Rehabilitation Act, because it is not "in the executive branch." *See Rivera,* 982 F.Supp. at 938–39. In reaching this conclusion, the court considered the structure of the Smithsonian, and noted that the Board of Regents of the Smithsonian includes *ex officio* representatives of the three branches of government, as well as nine other persons selected by Congress. *Id.* at 938. The court concluded that "the Executive does not have the control over the Smithsonian necessary to classify the Institution as 'in the executive branch.' " *Id.* at 939. On this appeal, Rivera made a number of arguments as to why the Smithsonian is "in the executive branch" for the purposes of the Rehabilitation Act.

 This dispute, however, became moot during the pendency of this appeal. On August 7, 1998 the President signed into law the Workforce Investment Act of 1998, Pub.L. No. 105–220, 112 Stat. 936 (1998). Section 341 of this statute amended section 501 of the Rehabilitation Act to cover the Smithsonian Institution. By its terms, the statute applies the amendment to all cases pending on the date of its enactment. It therefore provides the rule of decision for this case. *See Plaut v. Spendthrift Farm,* 514 U.S. 211, 226–27, 115 S.Ct. 1447, 1457, 131 L.Ed.2d 328 (1995) ("When a new law makes clear that it is retroactive, an appellate court must apply

that law in reviewing judgments still on appeal that were rendered before the law was enacted, and must alter the outcome accordingly.")

We therefore vacate the dismissal of Rivera's section 501 claims.

### B. Section 504 of the Rehabilitation Act.

■ Rivera also asserts that he can proceed under section 504 of the Rehabilitation Act. Section 504 provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of his or her disability . . . be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency." 29 U.S.C. § 794(a) (1994). Unlike section 501, however, section 504 is enforceable through Title VI of the Civil Rights Act of 1964, which provides (*inter alia*) for the termination of federal financial assistance to recipients who discriminate in violation of section 504. *See* 42 U.S.C. § 2000d–1 (1994).

The circuits are split on whether or not a disabled federal employee can assert a claim under section 504. The Fifth, Sixth, and Eighth Circuits have concluded that section 501 and section 504 of the Rehabilitation Act overlap, and that federal employees can sue under both provisions. *See Rivera,* 982 F.Supp. at 937 (citing cases). The Seventh, Ninth, and Tenth Circuits have held that section 501 is the exclusive remedy for federal employees suing under the Rehabilitation Act. *Id.* We have not addressed this issue.

Relying on the "detailed analysis of the interaction" of section 501 and section 504 in *DiPompo v. West Point Military Academy,* 708 F.Supp. 540 (S.D.N.Y.1989) (Mukasey, J.), and *McGuinness v. United States Postal Serv.,* 744 F.2d 1318 (7th Cir .1984) (Posner, J.), the district court concluded that section 501 provides the sole remedy for Rivera as a federal employee. We agree.

In *DiPompo,* a federal employee filed a complaint alleging that West Point violated both section 501 and section 504 of the Rehabilitation Act in failing to transfer him into its fire department. After considering the enforcement provisions and legislative history of the Rehabilitation Act, the court concluded that " § 501 was intended to become one of the many resources a federal employee has in pursuing an employment discrimination claim, while § 504 was not." *DiPompo,* 708 F.Supp. at 546. Specifically, the court emphasized that section 504 (unlike section 501) is enforced through Title VI of the Civil Rights Act—a statute which "is intended to police federally funded programs that do not comply with federal non-discrimination policies." *Id.* Finally, the court rejected as implausible the idea that Congress "first made laws against handicap discrimination part of the Title VII regulatory complex, an admittedly rigorous route for federal employees, and then made those substantive provisions irrelevant by giving handicapped federal employees a shortcut to federal court through Title VI." *Id.*

Similarly, *McGuinness* involved a discrimination claim by an applicant who was turned down for a job as postman. After affirming the dismissal of the plaintiff's complaint under section 501, the Seventh Circuit explained that the plaintiff had no remedy under section 504 because "it would make no sense for Congress to provide . . . different sets of remedies, having different exhaustion requirements, for the same wrong committed by the same employer." *McGuinness,* 744 F.2d at 1321.

Rivera argues that the Smithsonian is nonetheless a "program or activity" receiving federal financial assistance under section 504, and that he therefore has a remedy under the Rehabilitation Act. Rivera characterizes as "legalistic" the Seventh Circuit's interpretation of section 504, and urges this Court to consider "the result" Congress had in mind in enacting the Rehabilitation Act. According to Rivera, Congress intended to "enact broadly remedial non-discrimination laws."

We conclude that section 504 does not provide Rivera with an alternative route for relief under the Rehabilitation Act. Congress explicitly made Title VII remedies available for violations of section 501, and yet limited the remedies for violations of section 504 to those available under Title VI; this indicates that the two sections were not intended to provide alternative means to obtain relief for

the same act of discrimination against a federal employee.

### C. The Human Rights Laws.

Rivera also brought claims against his supervisors (Dolan and Palau) individually, alleging that their actions violated the Human Rights Laws of the State and City of New York, *see* N.Y. City Admin.Code § 8–107; New York Exec.Law § 296 (McKinney 1993). In dismissing these claims, the district court relied on *Brown v. General Servs. Admin.*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976), in which the Supreme Court held that section 717 of the Civil Rights Act of 1964 "provides the exclusive judicial remedy for claims of discrimination in federal employment." *Id.* at 835, 96 S.Ct. at 1969. *Brown* concerned racial discrimination, but the district court reasoned that the holding of *Brown* also applied to disability discrimination in violation of section 501 of the Rehabilitation Act, because (as was discussed above) the remedies for a violation of section 501 are precisely those provided by section 717 of the Civil Rights Act. *See Rivera*, 982 F.Supp. at 940–41. The district court also concluded that it was proper to dismiss the claims, even though they were against Dolan and Palau individually, because allowing such claims would easily circumvent *Brown's* holding that the Title VII remedies were exclusive. *Rivera*, 982 F.Supp. at 941, citing *DiPompo*, 708 F.Supp. at 547.

On appeal, Rivera concedes that *Brown* precludes him from asserting a claim against the Smithsonian, but contends that he may nonetheless sue Dolan and Palau individually. Rivera points out that the United States did not substitute itself as a defendant in this case, in accordance with the Federal Employees Liability Reform and Tort Compensation Act, 28 U.S.C. § 2679(d)(1) (1994) (upon certification that federal employee was acting within the scope of employment at the time of incident giving rise to claim, United States is to be substituted as a defendant). From this, Rivera infers that Dolan and Palau were acting outside the scope of their employment in discriminating against him, and that dismissal of his claim against Dolan and Palau individually would effectively im-munize them from liability for their private acts outside the scope of their employment.

■ We disagree. The certification procedure of § 2679(d)(1) applies only to tort claims, not to discrimination claims under the Human Rights Laws; the deduction that Rivera draws from the fact that the United States did not substitute itself as a party therefore is illogical. *See* Federal Employees Liability Reform and Tort Compensation Act of 1988, Pub.L. No. 100–694, § 2(b), 102 Stat. 4563, 4564 (noting that the purpose of the Act is to protect federal employees from personal liability for common law torts committed within the scope of employment).

■ We also agree with the district court that allowing state law discrimination claims to proceed against Palau and Dolan in their individual capacities would allow Rivera to evade the holding of *Brown* that Title VII provides the sole remedy for federal employees alleging employment discrimination.

### D. Other claims.

Rivera also asserted claims (i) against the Smithsonian under Title VII, and (ii) against the United States for invasion of privacy in violation of section 2784 of the Public Health Law of the State of New York, N.Y.Pub. Health Law § 2784 (McKinney 1993). We affirm the dismissal of those claims for substantially the reasons stated in the district court's opinion. *See Rivera*, 982 F.Supp. at 939–42.

The District Court declined to exercise supplemental jurisdiction over Rivera's invasion of privacy claim against Palau and Dolan individually because it had dismissed all his federal causes of action. *Id.* at 942. Now that Rivera's Rehabilitation Act claim is saved by a change in law, we vacate the District Court's dismissal of the privacy claims against the individual defendants.

### CONCLUSION

In summary, (1) the dismissal of Rivera's claim under § 501 of the Rehabilitation Act is vacated; (2) the dismissal of his claim under § 504 of the Rehabilitation Act is affirmed; (3) the dismissal of his claims under the Human Rights Laws of the State and

**106**

City of New York is affirmed; (4) the dismissal of his Title VII claims against the Smithsonian is affirmed; (5) the dismissal of his invasion of privacy claim against the United States is affirmed; and (6) the dismissal of his invasion of privacy claim against Palau and Dolan is vacated.

The judgment of the district court is therefore reversed in part and affirmed in part, and remanded for further proceedings consistent with this opinion.