CSX TRANSPORTATION, INC., Plaintiff,

v.

**NEW YORK STATE OFFICE OF REAL PROPERTY SERVICES, et al., Defendants.**

**Norfolk Southern Railway Company, Plaintiff,**

v.

**New York State Office Of Real Property Services, et al., Defendants.**

**Nos. 01 CIV. 1088(CLB), 01 CIV. 4752(CLB).**

United States District Court, S.D. New York.

July 10, 2001.

Peter J. Crossett, Hancock & Estabrook, LLP, Syracuse, NY, for Defendant Ravena–Coeymans–Selkirk School District.

Marc H. Reitz, Ferrara, Fiorenza, Larrison, Barrett & Reitz, PC, East Syracuse, NY, for Defendant East Syracuse–Minoa School District.

Susan L. Hauser, Municipal Attorney, City of Rochester Law Department, Rochester, NY, for Defendant City of Rochester.

Richard Rubenstein, Judith Kramer, State of New York, Office of Attorney General, Eliot Spitzer, New York City, Hung Kay Lo, State of New York Executive Department, Office of Real Property Services, Albany, NY, for Defendant NYS Office of Real Property Services.

Alessandra F. Zorgniotti, Assistant Corporation Counsel, New York City Law Department, New York City, for Defendant City of New York.

O'Keefe & Lindgren, LLP, White Plains, NY, for Plaintiff Norfolk Southern Railway Company.

James Blair, Wolman, Babitt & King, LLP, New York City, Gregory Fletcher, Baker, Donelson, Bearman & Caldwell, Memphis, TN, Courtney Hyers, CSX Corporation, Richmond, VA, for Plaintiff CSX Transportation, Inc.

Howard A. Stark, Deputy County Attorney, Monroe County Dept. of Law, Rochester, NY, for Defendant Monroe County.

James K. Riley, O'Connell & Riley, Pearl River, NY, for Defendant North Rockland Central School District: and Town of Stony Point.

Kenneth A. Schoetz, Buffalo, NY, for Defendant Town of Cheektowaga.

## MEMORANDUM & ORDER

BRIEANT, District Judge.

By motion filed on April 30, 2001 in this federal question railroad tax discrimination litigation, State Defendants New York State Office of Real Property Services, Thomas G. Griffen, Ifigenia T. Brown, Frank B. Cernese, and John Bacheler move for an Order granting judgment on the pleadings in the first above entitled action pursuant to Rule 12(c) of the Federal Rules of Civil Procedure on the grounds that the relief sought in the Complaint is barred by the Eleventh Amendment, and also that the lawsuit as against the individual Defendants must be dismissed because

jurisdiction under the doctrine of *Ex Parte Young* is unavailable in this case. Plaintiff filed Opposition papers on May 11, 2001. State Defendants filed Reply papers on May 22, 2001. This Court heard oral argument on May 30, 2001. By Stipulation dated June 25, 2001, this motion was extended to encompass the companion case of *Norfolk Southern Railway Company v. New York State Office of Real Property Services, et al.*, 01 Civ. 4752(CLB), filed on June 1, 2001.

This Court concludes that Congress validly abrogated the States' sovereign immunity when it passed the Railroad Revitalization and Regulatory Reform Act, which is also known as the "4–R Act," and which is codified at Sections 11501 and following of Title 49, United States Code. Congress did so after compiling a substantial legislative record evidencing the States' discriminatory taxation of the railroads' transportation property over many years, which violates the Equal Protection Clause. The Court also concludes that the doctrine of *Ex Parte Young* is available in this litigation to provide a jurisdictional basis on which to enjoin the individual State Defendants because of their pivotal connection to fixing and enforcing the allegedly unlawful assessments at issue in this case.

### Background

The claims of Plaintiffs CSX Transportation, Inc. ("CSXT") and Norfolk Southern Railway Company in this litigation are virtually identical to those asserted in *Consolidated Rail Corporation v. State Board of Equalization and Assessment of the State of New York, et al.*, 93 Civ. 6548(CLB), *aff'd sub nom. Consolidated Rail Corporation v. Town of Hyde Park, et. al.*, 47 F.3d 473 (2d Cir.1995) ("the *Conrail* case"), which was filed in this Court on September 20, 1993. The New York State Office of Real Property Services is the successor by statute of The

State Board of Equalization and Assessment of the State of New York, a Defendant in the 1993 litigation and has the same statutory powers. *See* N.Y. Real Property Tax Law § 200 (McKinney 2000). The railroad properties are also substantially the same. CSXT is now the operator and responsible for the taxes on approximately 60% of the former Consolidated Rail Corporation ("Conrail") transportation property in New York State, while Norfolk Southern Railway Company ("Norfolk Southern") operates the balance.

In the 1993 litigation, Conrail sought to enjoin the Defendants in that case from imposing allegedly discriminatory taxes on Conrail's rail transportation real property, now operated by Plaintiffs, for the 1993 tax year, on the ground that to assess those taxes would be in violation of the 4–R Act, which seeks to eliminate discriminatory taxation by States with respect to interstate rail transportation property. Familiarity of the reader with the entirety of that Act is assumed. For the convenience of the reader, in pertinent part, the Act provides:

"(b) The following acts unreasonably burden and discriminate against interstate commerce, and a State, subdivision of a State, or authority acting for a State or subdivision of a State may not do any of them:

1) Assess rail transportation property at a value that has a higher ratio to the true market value of the rail transportation property than the ratio that the assessed value of other commercial and industrial property in the same assessment jurisdiction has to the true market value of the other commercial and industrial property.

(c) ... Relief may be granted under this subsection only if the ratio of assessed value to true market value of rail transportation property exceeds

by at least 5 percent the ratio of assessed value to true market value of other commercial and industrial property in the same assessment jurisdiction." 49 U.S.C. § 11501.

Conrail filed similar suits complaining of discriminatory taxation for tax years 1994, 1995 and 1996. In 1997, following extensive settlement negotiations, the parties compromised Conrail's claims for tax years 1993 through 2000, and a settlement in the case was approved by this Court on June 17, 1997. The Conrail Settlement has now expired for most tax jurisdictions, except for the City of Buffalo, which remains subject to that Settlement.

Plaintiffs are now faced with New York State tax assessments or potential assessments for the year 2001 that it alleges are in violation of the 4–R Act.

The State Defendants determine and certify railroad taxation ceilings prior to the annual tax status date for each of more than 400 assessing authorities in New York State which have such interstate railroad property. These ceilings set the maximum valuations at which each locality may assess railroad real property within its boundaries for tax purposes. As of April 30, 2001, the State Board and the Office of Real Property services had determined one final and five tentative railroad ceilings. Finalization of the five tentative railroad ceilings had been suspended by agreement until June 4, 2001, and this Court preserved the *status quo* by issuing on May 30, 2001 a Temporary Restraining Order in effect until September 6, 2001, on which date the Court will hear Plaintiff's Order to Show Cause why the issuance of the ceilings should not be preliminarily enjoined.

### Discussion

■■ In deciding a Rule 12(c) motion for judgment on the pleadings, the Court accepts Plaintiffs' allegations as true and views the facts in the light most favorable to Plaintiffs. *Rivera v. Heyman,* 157 F.3d 101, 103 (2d Cir.1998). The motion will be granted only if it "appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Id.*

### State Immunity

■ The motion, on its face, would seem barred implicitly by the decision of our Court of Appeals in the *Conrail* case. However, the State Defendants contend that as a result of recent evolution in the doctrine of *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), and subsequent cases interpreting *Seminole Tribe,* Congress' limited abrogation of the States' sovereign immunity as set forth in the 4–R Act was an invalid act of Congress. The 4–R Act cites the Commerce Clause as the source of its power, and specifically permits injunctive relief in state or federal court against discriminatory and excessive real estate taxation of interstate railroads.

When presented with this same argument in 1996 in the *Conrail* case, this Court concluded that *Seminole Tribe* necessarily was restricted to its peculiar facts and to "the rather outrageous legislative scheme found in the Indian Gaming Act ...," and, accordingly, declined to find that *Seminole Tribe* invalidated the 4–R Act. As an alternative ground, upon which this Court now relies, this Court concluded that the 4–R Act was enacted through a valid exercise of Congress' power to enforce the equal protection clause of the Fourteenth Amendment, and accordingly the Act lawfully abrogates state sovereign immunity. As this Court stated in its prior decision,

"...the official misconduct targeted by the 4–R Act is the excessive and *dis-*

*criminatory* taxation of railroad property, compared with other property which in turn has a deleterious effect on the movement of goods by rail in interstate commerce. Discrimination and the denial of equal protection to the railroad as compared to other taxpayers is well within the scope of the powers granted to Congress by § 5 of the Fourteenth Amendment ... The 4–R Act can be upheld within § 5 of the Fourteenth Amendment, and a failure of Congress to cite this authority while citing mistakenly its Article I power to regulate Commerce is of no significance." (Emphasis in original)

*Consolidated Rail Corporation v. State Board of Equalization and Assessment of the State of New York,* 93 Civ. 6548(CLB), Memorandum and Order of November 27, 1996.[1]

Since this Court's 1996 decision, several Courts of Appeal have agreed with the conclusion of this Court, holding that the 4–R Act is a valid exercise of Congressional power pursuant to § 5 of the Fourteenth Amendment. *See, e.g., Oregon Short Line Railroad Company v. Dept. of Revenue,* 139 F.3d 1259 (9th Cir.1998); *Wheeling & Lake Erie Ry. v. Public Util. Comm'n,* 141 F.3d 88 (3d Cir.1998); *Union Pacific R.R. v. State of Utah,* 198 F.3d 1201 (10th Cir.1999).

▇▇▇ Remedial legislation directed against the States is a valid exercise of Congress' § 5 authority if there is a legitimate evidentiary basis, supported by express findings in the legislative record, to support the conclusion of Congress that the States engaged in unconstitutional discriminatory conduct, and if there is both "proportionality and congruence between the means adopted and the legitimate end

to be achieved." *City of Boerne v. Flores,* 521 U.S. 507, 520–21, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997). Where Congress does not identify a history or pattern of unconstitutional state action, it cannot lawfully abrogate state sovereign immunity pursuant to its enforcement powers under § 5 of the Fourteenth Amendment. *See, e.g., Kimel v. Florida Board of Regents,* 528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000).

Here, Plaintiff CSXT has cited to the Court, both in its papers and at oral argument, extensive legislative history demonstrating the existence of a pattern of unconstitutional discriminatory taxation by the States in connection with taxation of the real property of railroads that justifies the 4–R Act as a legitimate exercise of Congress' power under § 5 of the Fourteenth Amendment. In 1961, the United States Senate first considered the problem in a comprehensive report entitled, *National Transportation Policy: Report of the Committee on Commerce, United States Senate, by its Special Study Group on Transportation Policies in the United States,* which later became known as the *Doyle Report,* attached as Exhibit 1 to Plaintiff's Opposition papers. The Senate concluded at page 487 of the *Doyle Report,*

"The Association of American Railroad's research has been sufficiently extensive to establish that relative discrimination, of considerable magnitude, does in fact exist against the railroads in the assessment procedures of State and local governments for ad valorem taxation purposes. Therefore, the Association of American Railroad data is accepted as confirming the judgment of this study group that State and local assessment

---

1. This decision was not reviewed on appeal, inasmuch as the *Conrail* case was then settled.

procedures do discriminate against the railroads."

The conclusions of the *Doyle Report* were affirmed again in 1968, when the Senate Committee on Commerce stated at page 4 of its *Report on Discriminatory State Taxation of Interstate Carriers*, attached as Exhibit 4 of Plaintiff's Opposition papers,

> "... States continue to discriminatorily tax railroads by over $71 million per year. Year after year has gone by without any improvement in this situation, except in the rare instances where the railroads have been able to obtain change through court litigation. This committee can find no grounds for optimism that the States can or will correct their outdated practices, but rather, with increasing pressure for increased State and local tax revenues and rising tax rates, the situation may even worsen."

The 4–R Act was passed in 1968 in order to address these well-developed and well-documented concerns that a pattern of discriminatory conduct was evident in the conduct of the States' taxation practices with respect to interstate railroad transportation property.

█ The State Defendants also argue that the 4–R Act fails the "congruence and proportionality test," imposed by the Supreme Court in *City of Boerne v. Flores*, 521 U.S. 507, 520–21, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997). This Court disagrees. The Act is narrowly targeted to meet the Congressional concerns set forth above, and sets out a specific test for determining the existence and degree of tax discrimination against railroads, permitting "relief ... only if the ratio of assessed value to true market value of rail transportation property exceeds by at least 5 percent the ratio of assessed value to true market value of other commercial and industrial property in the same assessment jurisdic-

tion." 49 U.S.C. § 11501(c). Assuming for the argument that the 4–R Act prohibits some practices that might be constitutional, prohibition of a "somewhat broader swath of conduct" by remedial legislation is permissible as a deterrent measure. *Kimel v. Florida Board of Regents,* 528 U.S. 62, 81, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000). The Act's provisions are well within permissible bounds to remedy constitutional violations by the States, which are thoroughly documented in the Congressional record and in the record presently before this Court.

For the foregoing reasons, this Court again concludes the 4–R Act is constitutional and within the scope of the powers granted to Congress by § 5 of the Fourteenth Amendment, and that the failure of Congress to cite that power, and its mistaken reliance on the Commerce Clause are not material. Accordingly, the State Defendants' motion for judgment is denied.

### Individual State Defendants

█ Defendants also argue that the doctrine of *Ex Parte Young* provides only a limited exception to Eleventh Amendment Immunity, which exception is inapplicable to this case, requiring the Complaint to be dismissed as against the individual State Defendants. The landmark case of *Ex Parte Young* created a limited exception to the general principle of sovereign immunity by holding that "a suit challenging the constitutionality of a state official's actions in enforcing a state law is not one against the State," and is, therefore, not barred by the Eleventh Amendment where prospective injunctive relief is sought to end a continuing violation of federal law. *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *see also, Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985). With the many recent decisions by the Supreme Court address-

ing the question of States' sovereign immunity, the continued vitality of *Ex Parte Young* has been questioned by some commentators. Yet, in *Seminole Tribe,* the Supreme Court wrote, as a double negative, "We do not hold that Congress cannot authorize federal jurisdiction under *Ex Parte Young* over a cause of action with a limited remedial scheme. We find only that Congress did not intend that result in the Indian Gaming Act." *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 55 n. 17, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). This Court concludes that the doctrine of *Ex Parte Young* remains viable.

■ Defendants also contend, assuming that the doctrine of *Ex Parte Young* remains available to provide prospective injunctive relief for unlawful practices when the individual defendant has a sufficient connection to the unlawful act, that in this case, the role of the individual State Defendants is limited to determining and certifying railroad ceilings, which may then be adopted by localities, allegedly in violation of the 4–R Act. Defendants argue that the individual State Defendants are not involved in the allegedly unlawful act itself, because the local assessors are free to adopt a lower valuation, and a few actually do so, and, therefore, the doctrine of *Ex Parte Young* jurisdiction does not apply to permit the injunction sought against them here.

In 1995, Our Court of Appeals, in the *Conrail* case affirming the 1994 decision of this Court granting a preliminary injunction and class certification in litigation relating to the same railroad property, held that although as a formal matter each local assessing district makes its own determination of the final assessed value for railroad property in the district, there is such widespread adoption of the railroad ceil-

ings fixed by the State Agency that, realistically, when the State Agency determines the railroad ceiling for the assessing districts, it is making an "assessment" within the meaning of the 4–R Act. *See, Consolidated Rail Corporation v. Town of Hyde Park,* 47 F.3d 473, 481 (2d Cir.1995). Besides its precedential value, which remains effective in our Circuit, that decision is law of the case. By affidavit filed on June 4, 2001, Mr. James Blair affirms that it remains the practice of many assessing units in New York to assess railroad transportation property for taxation purposes at a value equal to the ceiling issued by Defendant the New York Office of Real Property Services. Accordingly, the individual State Defendants are quite demonstrably connected to the unlawful act of State discriminatory taxation of railroad real property, and are subject to *Ex Parte Young* jurisdiction on that ground.

■ Defendants also contend that because Congress, when it recodified the 4–R Act in 1978, deleted the language authorizing suit against a "governmental entity or person acting on behalf of such State or subdivision," replacing it with "a State, subdivision of a State, or authority acting for a State or subdivision of a State," this Court is required to enforce the statute "as written" and may not now permit a lawsuit against a "person." This argument is without merit, first because as was held in *Burlington Northern Railroad Company v. Oklahoma Tax Commission,* 481 U.S. 454, 458 n. 1, 107 S.Ct. 1855, 95 L.Ed.2d 404 (1987), the 1978 changes were not substantive, but merely a recodification. Additionally, the argument was not raised in the prior *Conrail* case, so it is barred by the doctrine of law of the case. In any event, at a minimum it is certainly clear that a person may be an authority,[2]

---

**2.** Webster's Third Int'l Dictionary 146 (3d     ed.1993)(defining "authority" as including,

and there is no suggestion that Congress intended a contrary meaning. To hold otherwise would make the remedy illusory and the statute, therefore, ineffective. No such purpose should be attributed to Congress on the legislative record presented here.

Accordingly, the State Defendants' motion for judgment on the pleadings as to the individual State Defendants is also denied.

*Conclusion*

For the foregoing reasons, the State Defendants' motion is denied in all respects.

SO ORDERED.

"4a: persons in command; specif: government—now usu. used in pl. in the concrete [the local authorities of each state] and sing. in the abstract [the public ~ is responsible for our protection]").