Donald C. BURTON, Plaintiff,

v.

John E. POTTER, Postmaster General, United States Postal Service, Defendant.

No. CIV.1:03CV00271.

United States District Court, M.D. North Carolina.

Oct. 4, 2004.

Donald C. Burton, Durham, NC, pro se.

Joan Brodish Binkley, Office of U.S. Attorney, Greensboro, NC, Jennifer S. Breslin, U.S.P.C. Law Department, Philadelphia, PA, for Defendant.

## MEMORANDUM OPINION

BULLOCK, District Judge.

Plaintiff Donald C. Burton[1] filed this employment discrimination action against John E. Potter, in his official capacity as Postmaster General of the United States Postal Service (hereinafter "USPS"), on March 26, 2003. Although Plaintiff's complaint fails to state with clarity the specific factual and legal bases for this action, his claims are limited to those raised in his September 20, 2000, charge before the Equal Employment Opportunity Commission ("EEOC"): that the USPS, in removing Plaintiff from the Postal Service, discriminated against him on the basis of mental disability and in retaliation for Plaintiff's prior EEOC actions in violations of the Rehabilitation Act, 29 U.S.C. § 701 et seq.[2] Before the court is Defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. For

1. Plaintiff filed his initial complaint *pro se.* He then retained counsel, who assisted him in filing an amended complaint and in discovery. Plaintiff's counsel withdrew, Plaintiff resumed proceeding *pro. se,* and is now again represented by counsel.

2. Plaintiff also alleged discrimination on the basis of race and sex in his EEOC filings, but failed to allege either claim in his initial or his amended complaint. Those claims are not properly before the court and are considered abandoned by Plaintiff.

Also, in his initial complaint, Plaintiff refers to harassment in the workplace and failure to accommodate his disability, violations of the Family Medical Leave Act, and fraud related to a forged signature on one of Plaintiff's EEOC filings. Plaintiff did not pursue these claims through USPS internal procedures nor did he raise them in the EEOC proceeding that led to this action. Such claims are not properly before this court and therefore will be dismissed for failure to exhaust administrative remedies.

the reasons set forth below, Defendant's motion will be granted.

## FACTS

Plaintiff worked as a mail handler at the United States Postal Services' Greensboro, North Carolina, Bulk Mail Center from October 2, 1993, until his termination on July 14 2000. Beginning in October 1996 and continuing through his termination, Plaintiff sought psychological counseling for job-related stress brought on by Plaintiff's repeated clashes with USPS management personnel over his attendance and conduct in the workplace. Plaintiff's stress ultimately led to his February 1, 2000, request for four hours of annual leave. After filling out the relevant form, Plaintiff left work that day and, as it turned out, never returned.

Upon Plaintiff's request, the USPS granted him a leave of absence from February 2, 2000, to February 23, 2000. Plaintiff was scheduled to return to work February 24, 2000, but failed to appear. From February 24, 2000, until his termination, the USPS considered Plaintiff absent without official leave ("AWOL").

The USPS grants or extends medical leaves of absence only upon a proper showing of medical need. An employee seeking a grant or extension of a leave of absence must provide information to his direct supervisor including details of his condition sufficient to enable the agency to make a determination of the merits of the request for leave. Here, Plaintiff failed to communicate with anyone at the USPS until March 15, 2000, when his psychologist sent a letter to Kathryn Sherrill, a nurse administrator at the Bulk Mail Center. This letter stated, in its entirety: "This letter serves to inform you that Mr. Donald Burton continues treatment with me due to job-related stress. He was placed on medical leave of absence effective February 1, 2000. Thank you for your assistance in this matter." (Def.'s Br. Supp. Mot. Summ. J., Ex. B–1.) This letter, sent twenty days after Plaintiff's leave expired, did not meet the USPS requirements for approval of a medical leave of absence.[3]

On March 28, 2000, Plaintiff's immediate supervisor, Jerome Hairston, sent Plaintiff an Absence Notification Letter requiring him to report for work within five days of receipt of the letter or provide documentation of any medical condition that precluded his return to work. The Absence Notification Letter specifically demanded that Plaintiff, if he could not return to work within five days, provide his immediate supervisor with a statement from a licensed physician describing the nature of his illness or injury and the expected duration of his inability to return to work. The letter warned Plaintiff that failure to comply with the stated requirements would be sufficient grounds for removal of Plaintiff from the Postal Service. Plaintiff received the Absence Notification Letter on April 6, 2000, but did not return to work within five days or provide adequate medical documentation to support his continuing absence.[4] Instead, Plaintiff claims that he forwarded a copy of his psychologist's

---

3. Pursuant to USPS regulations, medical documentation submitted in support of a request for a medical leave of absence must "provide an explanation of the nature of the employee's illness or injury sufficient to indicate to management that the employee was (or will be) unable to perform his or her duties for the period of the absence. Normally, medical statements such as 'under my care' or 're-ceived treatment' are not acceptable evidence of incapacitation to perform duties." (Def.'s Br. Supp. Mot. Summ. J., Ex. B.)

4. The March 28, 2000, letter also included a form required for employee claims under the Family Medical Leave Act. Plaintiff did not complete and return this form to the USPS.

March 15, 2000, letter to Jerome Hairston. As noted, this letter failed to meet USPS requirements for documentation in support of a request for a medical leave of absence as set out in the March 28, 2000, Absence Notification Letter.

The USPS sent Plaintiff a Notice of Removal on June 16, 2000, informing him that because "previous attempts to correct [his] attendance have not proved successful" he would be removed from the Postal Service on July 14, 2000. (Def.'s Br. Supp. Mot. Summ. J., Ex. A–2.) Plaintiff's psychologist sent a letter to Jerome Hairston on June 19, 2000, asserting that his March 15 letter to Kathryn Sherrill satisfied Plaintiff's informational obligations to the USPS. This letter also failed to meet the requirements specified in the March 28 Absence Notification Letter.[5] On July 14, 2000, Plaintiff was terminated from employment with the USPS for failure to report to work over the course of his twenty-week absence without official leave.

On September 20, 2000, Plaintiff filed charges with the EEOC, alleging discrimination on the basis of race, gender, disability, and retaliation in his discharge from the Postal Service.[6] On January 18, 2002, Defendant USPS was granted summary judgment on all charges by an EEOC Administrative Judge. On appeal to the Office of Federal Operations, summary judgment was upheld, and on December 30, 2002, the EEOC denied Plaintiff's request for reconsideration. Plaintiff's disability and retaliation claims are now before this court.

Plaintiff's mental disability claim is based on a condition his psychologist identifies as "Adjustment Disorder and Depressed Mood." Plaintiff claims that this condition is the result of job-related stress. Symptoms include loss of appetite; loss of concentration, which makes learning and performing routine tasks more difficult; loss of physical endurance which makes walking long distances difficult; headaches that prevent Plaintiff from completing routine household chores; sleepiness; and loss of productivity. (Gov't Ex. E, Pl.'s Resps. to Def.'s First Set Interrogs., Resps. 13 and 19.)

Plaintiff claims he was discriminated against in retaliation for filing grievances against the USPS, asserting that the "USPS terminated Plaintiff's job upon the filing of his EEOC complaint," and that "he suffered retaliatory conduct after he filed a criminal charge against Mr. Hairston and after he cited the Bulk Mail Center for various environmental violations." (*Id.*, Resp. 16.)

## DISCUSSION

### I. *The Summary Judgment Standard*

Summary judgment must be granted when the pleadings, responses to discovery, and the record show that "there is no genuine issue as to any material fact and that the moving party is entitled to judg-

---

**5.** Plaintiff's June 19, 2000, letter did identify his condition as "Adjustment Disorder with Anxiety and Depressed Mood" but did not provide any information related to the expected duration of his absence.

**6.** The issue raised before the EEOC was whether Burton "was discriminated against based on his race (Black), sex (male), disability (Adjustment Disorder and Depressed Mood), and retaliation for prior EEO activity, when by letter dated June 16, 2000, effective

July 14, 2000, he was issued a Notice of Removal for Failure to Report for Work as Scheduled/Continuous Absence." (Pl.'s Resp. Def.'s Mot. Strike at 184 EEOC Decision on Summary Judgment, Jan. 18, 2002, at 3.) The Administrative Law Judge expressly denied Plaintiff's assertion that claims of hostile work environment and failure to accommodate Plaintiff's disability were before the Commission. *Id.*, at n. 2.

ment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of persuasion on all relevant issues. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the non-moving party must come forward with specific facts demonstrating a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *see also Cray Communications, Inc. v. Novatel Computer Sys., Inc.,* 33 F.3d 390, 393–94 (4th Cir.1994) (moving party on summary judgment may simply argue the absence of evidence by which the non-moving party can prove her case). The non-moving party may survive a motion for summary judgment by producing "evidence from which a [fact finder] might return a verdict in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Summary judgment is proper only when there are no genuine issues presented for trial and the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In considering the evidence, all reasonable inferences must be drawn in favor of the non-moving party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. However, "the mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient; there must be evidence on which the [fact finder] could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. 2505.

II. *The Rehabilitation Act*

■ The Rehabilitation Act provides that

No otherwise qualified individual with a disability in the United States … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination … under any program or activity conducted by any Executive Agency or by the United States Postal Service.

29 U.S.C. § 794(a). Because the Postal Service is "an independent establishment … of the Government of the United States," the sole remedy for Plaintiff's discrimination claims against the Postal Service is under the Rehabilitation Act. 39 U.S.C. § 201; *see Rivera v. Heyman,* 157 F.3d 101, 103 (2d Cir.1998); *Brown v. Henderson,* 2000 WL 362035 at *1 (S.D.Ala.2000). However, the Rehabilitation Act and the Americans with Disabilities Act ("ADA") "generally are construed to impose the same requirements due to the similarity of the language of the two acts," *Baird v. Rose,* 192 F.3d 462, 468 (4th Cir.1999), and this court will, therefore, impose the same requirements on parties pleading under either Act. *Id.,* at 469.

■ Where, as here, there is no direct evidence of discrimination and the Defendant denies any discriminatory reasons for terminating the Plaintiff, the three-step method of proof established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) applies. *Halperin v. Abacus Tech. Corp.,* 128 F.3d 191, 196 (4th Cir.1997). First, Plaintiff "must establish, by a preponderance of the evidence, a *prima facie* case of discrimination." *Id.* If Plaintiff succeeds in establishing a *prima facie* case of discrimination, the burden shifts to the USPS to "rebut the presumption of discrimination by producing evidence that the plaintiff was [removed] … for a legitimate, nondiscriminatory reason." *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). "To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the

plaintiff's [removal]." *Id.* If the USPS rebuts a presumption of discrimination, Plaintiff bears the burden of proving intentional discrimination. *Halperin,* 128 F.3d at 196 (citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506–11, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)).

### III. *Disability Claim*

■ To establish a *prima facie* case of disability discrimination, Plaintiff must show: (1) that he had a disability; (2) that he was able to perform the essential functions of the job, with or without reasonable accommodation; and (3) that he suffered an adverse employment action because of his disability. *Id.* at 197.

The term "disability" is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Plaintiff claims that he has an actual disability and a record of disability at the USPS.

Whether Plaintiff has an actual disability turns on whether the limitation presented by Plaintiff's stress substantially limits a major life activity. The term "major life activities" refers to basic functions such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). Plaintiff must demonstrate that, because of his stress, one of these major life activities is "substantially limit[ed]." 29 C.F.R. § 1630.2(j). In order to meet the "substantially limits" requirement, an impairment must interfere with a major life activity "considerabl[y]" or "to a large degree." *Toyota Motor Mfg., Ky., Inc. v. Williams,* 534 U.S. 184, 196, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002). Several factors are considered in determining whether a person is substantially limited in a major life activity: (1) the nature and severity of the impairment; (2) its duration or anticipated duration; and (3) its long-term impact. *Williams v. Channel Master Satellite Sys.,* 101 F.3d 346, 349 (4th Cir.1996); 29 C.F.R. § 1630.2(j)(2)(I)-(iii). Plaintiff must show that he is "(i) unable to perform a major life activity that the average person in the general population can perform or (ii) [that he is] significantly restricted as to the condition, manner, or duration" of his ability to perform a major life activity compared to an average person. 29 C.F.R. § 1630.2(j)(1).

■ Plaintiff offers no evidence to show that he was substantially limited in a major life activity. The record consists only of Plaintiff's statements that he is disabled together with notes and letters from his psychologist that simply report Plaintiff's complaints of stress. The medical records do not indicate that Plaintiff's condition severely limits any major life activities, do not indicate how long any limitations will persist, and offer no evidence of the long-term effect of these limitations. *Williams,* 101 F.3d at 349. Plaintiff has not demonstrated that he cannot perform a major life activity that the average person can perform, nor that he is significantly restricted in the manner in which he can perform a major life activity. 29 C.F.R. § 1630.2(j)(1). The most that can be said for Plaintiff is that he has alleged moderate impairments that do not rise to the level of disabilities under the Rehabilitation Act. *See Toyota,* 534 U.S. at 184, 122 S.Ct. 681.

Plaintiff contends that he has a record of an impairment meeting the definition of disability. Plaintiff fails to cite any facts, however, to establish a record of such an impairment. Instead, Plaintiff has submitted copies of numerous grievances filed with his union and the EEOC in which

Plaintiff claims he was discriminated against on the basis of stress, as well as copies of several letters written by Plaintiff's doctors to the USPS informing the agency of his ongoing treatment for stress and Adjustment Disorder and Depressed Mood.

■■■ A showing that Plaintiff has been diagnosed with an illness or condition is not enough to establish a record of a substantially limiting impairment. *EEOC v. R.J. Gallagher Co.,* 181 F.3d 645, 655 (5th Cir.1999). The record of impairment qualifies as a disability only where "the impairment indicated in the record [is] one that substantially limits a major life activity." *Lusk v. Ryder Integrated Logistics,* 238 F.3d 1237, 1241 (10th Cir.2001). Here, the record shows only that Plaintiff complained of and received treatment for stress. Plaintiff has failed to produce evidence sufficient to show that his stress limits a major life activity. He has, therefore, failed to show that he has a record of impairment. *Id.*

Plaintiff has failed to offer sufficient evidence to raise a genuine issue of material fact as to whether he has a mental or physical impairment that substantially limits one or more of his major life activities or has a record of an impairment which substantially limits one or more of his major life activities. Accordingly, Plaintiff is unable to establish the first prong of the *prima facie* case for disability discrimination.

■■■ Because Plaintiff has not established that he is disabled, he is precluded from establishing the second prong of the *prima facie* case for disability discrimination. Even if he were disabled, Plaintiff is not a "qualified individual with a disability" to which the protections of the Rehabilitation Act apply. A "qualified individual with a disability" is one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Plaintiff's job as a mail handler requires that he load mail onto various machines and operate those machines. To do so, he must be physically present at the Bulk Mail Center. Plaintiff did not appear for work as scheduled on February 24, 2000, nor did he notify his supervisor that he would be absent. He remained AWOL for twenty consecutive weeks. Under such circumstances, Plaintiff can hardly be deemed a person who can perform the essential functions of a mail handler. *See Tyndall v. Nat'l Educ. Ctrs., Inc.,* 31 F.3d 209, 213 (4th Cir.1994) ("A regular and reliable level of attendance is a necessary element of most jobs.") Thus, even if Plaintiff were disabled within the meaning of the Rehabilitation Act, the USPS may properly remove him because his prolonged, unexcused absence precluded him from fulfilling the essential functions of his job. *See Carter v. Tisch,* 822 F.2d 465, 467 (4th Cir.1987).

Because Plaintiff is not disabled, he also cannot satisfy the third prong of his *prima facie* case, that is, that he was terminated because of his disability. Even if Plaintiff were disabled, any inference of discrimination raised by his termination is rebutted by the USPS' legitimate, non-discriminatory reasons for removing him from the Postal Service. The USPS asserts that it removed Plaintiff for his continued, unexcused absence from work, which, by the time of his July 14, 2000, termination, lasted twenty consecutive weeks. The USPS warned Plaintiff that his absence could lead to his removal from the Postal Service, yet Plaintiff failed to provide the USPS with information required to grant him an official medical leave of absence. Plaintiff instead remained AWOL, and, in the meantime, held two other jobs. The

USPS terminated Plaintiff because his persistent, unexplained absence was "counter-productive to postal service operations." (Def.'s Br. Supp. Mot. Summ. J., Ex. A, ¶ 3.)

■ The USPS has stated a legitimate, non-discriminatory reason for terminating Plaintiff. Plaintiff has not produced any evidence of intentional discrimination or evidence that suggests the USPS's proffered reason is mere pretext. Plaintiff's "unsubstantiated allegations and bald assertions" are insufficient to create a genuine issue of material fact of disability discrimination in his removal from the Postal Service. *Evans v. Techs. Applications and Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996).

## IV. *Retaliation Claim*

■ A retaliation claim based on the Rehabilitation Act is analyzed in the same fashion as a Title VII retaliation claim. See *Baird v. Rose*, 192 F.3d 462, 471–72 (4th Cir.1999) (citing 42 U.S.C. § 12117) ("the anti-retaliation provision of the ADA ... specifically makes the remedies available under Title VII applicable to actions under the ADA"). To establish a *prima facie* case of retaliation, Plaintiff must prove that (1) the employee engaged in protected activity; (2) the employer took adverse employment action against the employee; and (3) a causal connection existed between the protected activity and the adverse action. See *Causey v. Balog*, 162 F.3d 795, 803 (4th Cir.1998).

■ Plaintiff engaged in a protected activity when he filed numerous EEOC charges against the USPS, when he filed environmental complaints against the Bulk Mail Center, and when he wrote to various North Carolina politicians complaining of conditions at the Bulk Mail Center.[7] Plaintiff suffered adverse employment action when the USPS removed him from service. Plaintiff cannot, however, establish the necessary causal connection between his protected activities and his termination.

■ Plaintiff's most recent EEOC action led to the present civil suit, but that charge cannot be the basis of Plaintiff's retaliatory discharge claim because it was filed after Plaintiff was terminated. Plaintiff claims his next most recent EEOC filing is a harassment complaint against Jerome Hairston dated April 19, 1999.[8] Almost fifteen months passed between Plaintiff's protected EEOC activity and his discharge on July 14, 2000. Similarly, Plaintiff's environmental complaints occurred in March and April of 1999 and he wrote letters to various politicians in May of 1999. "A lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action ... negates any inference that a causal connection exists between the two." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir.1998). *See also Causey v. Balog*, 162 F.3d 795, 803 (4th Cir.1998) (holding

---

7. Plaintiff also alleges retaliation in response to criminal charges he filed against Hairston. Plaintiff has offered no evidence of such charges, and has therefore failed to establish a genuine issue of retaliation based on them.

8. Plaintiff asserts, in his amended complaint, that he filed an EEOC charge against Hairston on April 19, 1999. Plaintiff did not produce any evidence of a charge filed on that day. The most recent EEOC activity on the record before the court is Plaintiff's submission of "Information for Precomplaint Counseling" dated April 7, 1999, in which Plaintiff complains that his supervisor, Jerome Hairston, harassed him. Because the difference in the dates has no material effect on this decision, April 19, 1999, is presumed to be the date of Plaintiff's most recent EEOC activity.

that, absent other evidence, a thirteen-month interval between an EEO charge and alleged retaliatory termination was too long to establish a causal link.)

Plaintiff presents no direct evidence of a causal link between his protected activities and his termination and has, therefore, failed to establish a *prima facie* case of retaliatory discharge.

## CONCLUSION

Plaintiff has failed to establish his *prima facie* case of discrimination based on his mental condition or in retaliation for his engaging in protected activities. He has also failed to rebut the USPS's legitimate, non-discriminatory reasons for removing him from the Postal Service. Therefore, for the reasons set forth in this opinion, Defendant's motion for summary judgment will be granted.

An order and judgment in accordance with this memorandum opinion shall be entered contemporaneously herewith.

### ORDER and JUDGMENT

For the reasons set forth in the memorandum opinion filed contemporaneously herewith,

IT IS ORDERED AND ADJUDGED that Defendant's motion for summary judgment [Doc. # 32] is **GRANTED** and this action is **DISMISSED** with prejudice.

IT IS FURTHER ORDERED that Defendant's motion to strike [Doc. # 39] is **DENIED** as moot.