**SPEADMARK, INC., Plaintiff,**

**v.**

**FEDERATED DEPARTMENT STORES, INC., et ano., Defendants.**

**No. 97 CIV. 2366(LAK).**

United States District Court, S.D. New York.

Nov. 4, 1997.

---

**24.** Pl. Mem. 7.

moving for a protective order, as is its right under the Federal Rules, but (2) it saw little basis for such a motion on the basis of the information then before the Court. The motion was filed a few days later.

The plaintiff in this case serves in substance as a labor broker for FDS and its subsidiaries at FDS's Secaucus, New Jersey, distribution center. Merchandise intended for sale at FDS stores is sent to the center where it is processed by plaintiff's union personnel—i.e., ticketed, placed on hangers, etc. and then shipped to FDS's stores for sale. FDS reimburses plaintiff for its costs and, in addition, pays a management fee. The crux of the dispute in litigation is whether FDS is obliged to increase the management fee due to plaintiff by reason of calling upon plaintiff to process goods intended for FDS's Bloomingdale's stores, a result that plaintiff argues is appropriate because the intention of the parties was that the contract obliged plaintiff to perform services only in relation to goods intended for Abraham & Straus stores (since merged into Macy's East).

Jeffrey M. Siger, Adrienne Koch, Esanu, Katsky, Korins & Siger, New York City, for Plaintiff.

Diane Saunders, Morgan, Brown & Joy, Boston, MA, for Defendants.

## MEMORANDUM OPINION

KAPLAN, District Judge.

Defendant Federated Department Stores, Inc. ("FDS") has moved for a protective order providing that the deposition of FDS by James Zimmerman, its chairman and chief executive officer, not be had.

In accordance with the individual practices of the undersigned, the parties raised the issue now tendered by this motion with the Court by letters. On October 28, 1997, the Court held a premotion conference with counsel by telephone during which it made clear that (1) it would not prohibit FDS from

■ Plaintiff now seeks to depose Mr. Zimmerman.[1] and defendants just as strenuously resist. They point to cases in which courts have precluded depositions of senior management officials—what defendants term "apex" depositions—where the depositions manifestly were sought for the purpose of harassment and where the proposed deponents knew little or nothing about the subject matter of the action. But the analogy is quite imperfect.

The contract in suit is a lineal descendant of an earlier contract signed in 1970. In at least some respects, the contracts are quite similar or identical. The 1970 contract, moreover, grew out of discussions that involved Mr. Zimmerman and others at FDS as well as plaintiff's principal, Arnold O. Riback. Indeed, according to the testimony of Mr. Riback, he and Mr. Zimmerman were involved in between 10 and 20 meetings on the subject. Thus, the likelihood that Mr.

---

1. Actually, plaintiff first noticed the deposition in July for a date in September. Defendants have

been seeking to avoid the deposition from the outset.

Zimmerman has information relevant to the subject matter of the action is significant.

In resisting the deposition, FDS argues first that plaintiff has not demonstrated that Mr. Zimmerman has relevant personal knowledge of any of the facts of the case. But it is not plaintiff's burden to do so. An order barring a litigant from taking a deposition is most extraordinary relief. *E.g., Investment Properties Int'l, Ltd. v. IOS, Ltd.,* 459 F.2d 705, 708 (2d Cir.1972); *Naftchi v. New York University Medical Center,* 172 F.R.D. 130, 132 (S.D.N.Y.1997). It is the party seeking such an order that bears the burden of proving that the proposed deponent has nothing to contribute. *See, e.g., Naftchi, supra.* And it is clear in this case that Mr. Zimmerman is sufficiently likely to have knowledge of matters that appropriately are the subject of discovery that the relief FDS seeks is inappropriate irrespective of the burden of proof.

FDS's resistance of this conclusion centers on a distinction it seeks to draw between " 'concept' discussions and contract negotiations ..." (Def.Mem.6) It concedes that Mr. Zimmerman had discussions with Mr. Riback concerning the concept that eventually led to the initial contract between the parties, but contends that he was not involved in negotiating the contract. But this is an entirely false distinction, at least for present purposes. To begin with, as Mr. Riback testified, "it's very hard ... to [determine] ... where ... we go from concepts to negotiating the contract to signing the contract." In other words, one person's conceptual discussion is another person's negotiation. More basically, the fundamental task for the Court in most contract cases is determination of the reasonable expectations of the parties. To say that only discussions of contractual language are relevant and that discussions of concepts are not simply is absurd.

FDS argues next that deposing Mr. Zimmerman would not be the least intrusive means of obtaining the information plaintiff seeks. It contends that FDS' Mr. Flink, who was involved in negotiating the 1970 contract, is available and will be deposed. But there is no suggestion that Mr. ___ participated in all of the discussions between Messrs. Riback

and Zimmerman. In consequence, even if there were a strong case for precluding or postponing a deposition of Mr. Zimmerman merely because there is another witness who was present on an occasion which is a subject of dispute, and that is questionable on this record, there would be no basis for precluding a deposition of Mr. Zimmerman because Mr. Flink simply was not present on all relevant occasions.

FDS argues finally that the information sought is not relevant. It notes that the contract in suit was signed in 1978, that its literal terms refer only to plaintiff processing goods for Abraham & Straus, and that plaintiff therefore can argue that the literal terms of the contract support its position. According to FDS, any reference that plaintiff might make to other aspects of the business relationship between the parties necessarily would relate to the current relationship, a matter of which it suggests that Mr. Zimmerman is ignorant. The current relationship, moreover, FDS asserts, is nothing like the relationship at the time Mr. Zimmerman was involved. Unfortunately, however, counsel's assertion is simply that. It certainly is not a basis upon which to bar a deposition that, on the face of things, appears quite possibly to be relevant.

The motion for a protective order is denied.

SO ORDERED.