Vincenzo **MILIONE**, Plaintiff,

v.

**CITY UNIVERSITY OF NEW YORK, Matthew Goldstein as Chancellor of City University of New York, Queens College, James Muyskens as President of Queens College, The John D. Calandra Italian American Institute, and Anthony Tamburri as Dean of the John D. Calandra Italian American Institute, Defendants.**

No. 10 Civ. 5289 (AKH).

United States District Court, S.D. New York.

June 21, 2013.

Max Di Fabio, Di Fabio & Associates, P.C., White Plains, NY, Stephen Paul Markus, Henry Kyu–Yon Yi, Claudio Debellis, Walsh Markus McDougal & Debellis, LLP, Garden City, NY, for Plaintiff.

Beth L. Kaufman, Alycia Sarah Levy, Schoeman, Updike & Kaufman, LLP, Christine Anne Ryan, Office of New York State Attorney General, New York, NY, for Defendants.

### ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT

ALVIN K. HELLERSTEIN, District Judge:

Plaintiff Vincenzo Milione claims he was demoted for promoting Italian–American affirmative action and condemning discrimination against Italian Americans. Plaintiff brings federal, state, and local law claims against three institutions and three leaders of the institutions: the City University of New York ("CUNY"), CUNY Chancellor Matthew Goldstein ("Goldstein"), Queens College, Queens College President James Muyskens ("Muyskens"), the John D. Calandra Italian American Institute ("Calandra Institute"), and Calandra Institute Dean Anthony Tamburri ("Tamburri"). Plaintiff asserts claims for national origin discrimination, disability discrimination, and retaliation under Title VI, 42 U.S.C. § 2000d, and Title VII, 42 U.S.C. § 2000e, *et seq.*, and claims violations of the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL").

Defendants move, after discovery, to dismiss the Calandra institute and Queens College, and Goldstein, Muyskens, and Tamburri (the "Individual Defendants"), pursuant to Rule 12(b)(6). Defendants also move for a protective order to bar the deposition of Chancellor Goldstein and for summary judgment pursuant to Rule 56. Argument was heard March 19, 2013. For the reasons stated on the record and below, Defendants' motions are granted.

### I. Background

The Calandra Institute of CUNY was created by the New York State legislature in 1979 to foster higher education among Italian Americans. Plaintiff Milione, an Italian American, began working at the Calandra Institute as a research associate in 1987. In 1990, Plaintiff filed a complaint with the Department of Labor after CUNY denied him a promotion at City College. The matter was settled in 1990. Plaintiff's supervisor, Dr. Joseph Scelsa ("Scelsa") also sued CUNY, claiming it discriminated against Italian Americans, and Plaintiff testified in support of Scelsa's claims. A settlement was reached in 1994, providing for the Calandra Institute to be integrated into Queens College, a CUNY senior college. In 1995, Plaintiff became "Director for Research and Education" at the Calandra Institute, overseeing re-

search related to CUNY's compliance with its Italian–American affirmative action programs.

In March 2006, CUNY named Anthony Tamburri the new Dean of the Calandra Institute. At the time of his appointment, Tamburri wrote to President Muyskens suggesting that various personnel changes may be needed at the Calandra Institute, including altering Plaintiff's title. Tamburri Decl. Ex. A. In June 2006, Plaintiff gave a presentation to the New York Conference of Italian–American State Legislators critical of CUNY's Italian–American affirmative action programs and CUNY's progress in eliminating discrimination against Italian Americans. Plaintiff presented a similarly critical report to the CUNY chancellor's office in October 2006. Plaintiff claims that after these presentations, Tamburri instructed him not to publicly present his research findings without Tamburri's prior approval. In a letter dated August 7, 2007, Tamburri changed Plaintiff's job title and description, naming him "Director of Demographic Studies." *Id.* Ex. C. Plaintiff's salary and benefits were not affected, but Plaintiff claims he was stripped of his staff and forced to abandon his research on Italian–American affirmative action. Plaintiff alleges that this effectively demoted him, in retaliation for his 1990 complaint to the Labor Department, his 1992 testimony in the Scelsa lawsuit, and his activities in support of Italian–American affirmative action. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission on January 10, 2008. A Notice of Right to Sue was issued April 15, 2010, and Plaintiff brought this cause of action on July 12, 2010.

## II. Defendants' Motion to Dismiss the Calandra Institute, Queens College, and the Individual Defendants

■ To survive Defendants' Rule 12(b)(6) motion to dismiss,[1] Plaintiff must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 547, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Court must "assume[ ] the truth of all factual allegations contained in the complaint and draw[ ] all inferences in the plaintiff's favor." *Boyd v. Nationwide Mut. Ins. Co.,* 208 F.3d 406, 409 (2d Cir. 2000).

■ Defendants argue that Plaintiff cannot sue the Calandra Institute or Queens College as legally cognizable entities separate from CUNY. This is correct. *See* N.Y. Educ. Law §§ 6202(2); *Salerno v. CUNY,* 2000 WL 1277324, *3 (S.D.N.Y. Sept. 8, 2000), *vacated, in part, on other grounds,* 2002 WL 31856953 (S.D.N.Y. Dec. 19, 2001). Plaintiff did not challenge this position in either his briefing or during oral argument. Plaintiff's claims against the Calandra Institute and Queens College are therefore dismissed.

■ Defendants next argue that Plaintiff cannot sue the Individual Defendants under Title VI or Title VII. Again, Defendants are correct. The proper defendant in a Title VI action "is the entity that receives federal financial assistance, not an individual." *Kelly v. Rice,* 375 F.Supp.2d 203, 208 (S.D.N.Y.2005); *Bayon v. State Univ. of New York at Buffalo,* 2001 WL 135817, *2 (W.D.N.Y. Feb. 15, 2001) ("plaintiff's Title VI claims against the individual defendants in their individu-

---

1. Earlier in the case, I denied Defendants' 12(b)(6) motion with leave to renew. After mediation failed, Defendants answered, denying claims and preserving defenses. Defendants' motion to dismiss should have been styled as made pursuant to Rule 13(c), Fed. R.Civ.P. The standards for a Rule 12(c) motion are the same as for a Rule 12(b)(6) motion. *Burnette v. Carothers,* 192 F.3d 52, 56 (2d Cir.1999).

al capacities fail because this act does not provide for individual liability"). Individuals are also not liable in either their individual or official capacities under Title VII. *Jones v. Consumer Info. Dispute Resolution*, 2007 WL 2398811 (S.D.N.Y. Aug. 16, 2007); *McBride v. Routh*, 51 F.Supp.2d 153, 157 (D.Conn.1999); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313–14 (2d Cir.1995) ("individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII") ("the statutory scheme and remedial provisions of Title VII indicate that Congress intended to limit liability to employer-entities with fifteen or more employees"). Plaintiff's federal claims against the Individual Defendants are therefore dismissed. Furthermore, the dismissal of Plaintiff's remaining federal claims, discussed below, deprives this Court of supplementary jurisdiction to hear Plaintiff's state and local claims against the Individual Defendants. 28 U.S.C. § 1367.

Defendants' motion to dismiss Queens College, the Calandra Institute, and the Individual Defendants is granted. Plaintiff's claims against CUNY, the sole remaining Defendant, are discussed below.

### III. Defendants' Motion for Summary Judgment for CUNY

Summary judgment is appropriate where the evidentiary record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also* Fed.R.Civ.P. 56(c). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court must "view the evidence in the light most favorable to the party opposing summary judgment, ...

draw all reasonable inferences in favor of that party, and ... eschew credibility assessments." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004). However, the non-moving party may not rely on conclusory allegations or unsubstantiated speculation to defeat the summary judgment motion. *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir.1998). Although district courts should be cautious of granting summary judgment in employment discrimination cases "where the employer's intent, motivation, or state of mind is [the material fact] at issue," *Balut v. Loral Elec. Sys.*, 988 F.Supp. 339, 343 (S.D.N.Y.1997), the remedy remains available in appropriate cases.

#### a. Plaintiff's Title VI Claims

Plaintiff alleges that CUNY retaliated and discriminated against him on the basis of his national origin. Title VI provides, "No person ... shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance." 42 U.S.C. § 2000d. However, "for a claimant to recover under Title VI against an employer for discriminatory employment practices, a threshold requirement is that the employer be toe recipient of federal funds *aimed primarily at providing employment.*" *Ass'n Against Discrimination in Employment, Inc. v. City of Bridgeport*, 647 F.2d 256, 276 (2d Cir.1981) (emphasis added). Plaintiff must allege a "logical nexus" between the federally funded program and the employment discrimination suffered. *Commodari v. Long Isl. Univ.*, 89 F.Supp.2d 353, 378 (E.D.N.Y. 2000). In this case, Plaintiff fails to allege or prove that the federal funds received by CUNY were "aimed primarily at providing employment." Plaintiffs job at the Calandra Institute was not federally funded, and

Plaintiff does not challenge Defendant's argument that he cannot bring a Title VI claim. Therefore, Plaintiff's Title VI claims are dismissed.

### b. Plaintiff's Title VII Discrimination Claims

Plaintiff claims CUNY unlawfully discriminated against him on the basis of disability and national origin. Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Title VII also prohibits an employer from "discriminat[ing] against any of his employees ... because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a).

■ First, Plaintiff asserts a disability discrimination claim based on his alleged stutter. Title VII is not directed against disabilities, only against discrimination based on race, color, religion, sex, or national origin. *See Rivera v. Heyman*, 982 F.Supp. 932, 940 (S.D.N.Y.1997) aff'd in part, rev'd in part, 157 F.3d 101 (2d Cir. 1998). Plaintiff's disability discrimination claim is dismissed.

■ Second, Plaintiff asserts discrimination on the basis of his national origin. Title VII provides that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e–2(m). "An employment decision ... violates Title VII when it is based in whole or in part on discrimination." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir.2008) (quotation marks omitted). To establish a prima facie case of discrimination, Plaintiff bears the burden of showing: (1) that he belonged to a protected class; (2) that he was qualified for the position he held; (3) that he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir.2008).

■ Although Plaintiff satisfies the first two of these four elements and arguably might satisfy the third element, he cannot establish the fourth element. Plaintiff has given no evidence that Defendants changed his job title and responsibilities because Plaintiff is Italian American. *See Patane v. Clark*, 508 F.3d 106, 112 (2d Cir.2007) (dismissing Title VII claim because plaintiff "failed to plead any facts that would create an inference that any adverse action taken by any defendant was based upon [plaintiff's protected status]"). Plaintiff himself testified that he does not believe Dean Tamburri was motivated by Plaintiff's Italian–American status. Milione Dep. at 290. Tamburri himself is Italian American, and courts may draw an inference against discriminatory intent where the person who participated in the adverse action is a member of the same protected class. *Eder v. City of N.Y.*, 2009 WL 362706 (S.D.N.Y. Feb. 12, 2009); *Marlow v. Office of Court Admin.*, 820 F.Supp. 753, 757 (S.D.N.Y.1993), aff'd, 22 F.3d 1091 (2d Cir.1994). Plaintiff has not established a prima facie case of national origin discrimination under Title VII. I therefore grant summary judgment dismissing Plaintiff's Title VII discrimination claims.

### c. Plaintiff's Title VII Retaliation Claim

Plaintiff's sole remaining federal cause of action is his Title VII retaliation claim against CUNY. I evaluate this claim under the three-step, burden-shifting framework established by *McDonnell Douglas,* 411 U.S. at 802–03, 93 S.Ct. 1817. First, Plaintiff must establish a prima facie case of retaliation by demonstrating that (1) he engaged in protected activity under Title VII, (2) he suffered an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse employment action. *Gorzynski v. JetBlue Airways Corp.,* 596 F.3d 93, 110 (2d Cir.2010). The burden then shifts to Defendants to articulate a legitimate, non-retaliatory rationale for its employment decision. If Defendants carry that burden, Plaintiff must show by competent evidence that the reasons proffered by Defendants were pretext for retaliatory animus.

After "view[ing] the evidence in the light most favorable to [Plaintiff]," I find that Plaintiff can establish a prima facie case of retaliation. Defendants can, in turn, articulate a legitimate rationale for the employment decision made with regard to Milione. Plaintiff, however, cannot satisfy his burden of showing that this rationale is mere pretext for retaliatory animus, or even raise a triable issue as to that proposition. I therefore grant summary judgment for Defendants.

To establish a prima facie case of retaliation, Plaintiff first must show he engaged in a protected activity. A plaintiff who "expresses opposition to an employment practice unlawful under Title VII," engages in a protected activity. *Henny v. New York State,* 842 F.Supp.2d 530, 559 (S.D.N.Y.2012). Plaintiff's job was to promote Italian–American affirmative action, and Plaintiff was a vocal advocate for such programs and against Italian–American discrimination. In June and October 2006, Plaintiff addressed groups outside the Calandra Institute on these issues, and that advocacy, Plaintiff alleges, caused Dean Tamburri to change Plaintiff's job title and responsibilities. While advocacy for affirmative action is not a protected activity, *Correa v. Mana Prod.,* 550 F.Supp.2d 319, 330 (E.D.N.Y.2008), opposition to discrimination is protected under Title VII. *Sumner v. U.S. Postal Serv.,* 899 F.2d 203, 209 (2d Cir.1990) (Title VII protects "informal protests of discriminatory employment practices, including making complaints to management ... protesting against discrimination by industry or by society in general"); *Johnson v. Univ. of Cincinnatti,* 215 F.3d 561, 577 (6th Cir.2000).[2] Plaintiff has shown that he engaged In a protected activity.

Second, Plaintiff must show that he suffered an adverse employment action—a "materially adverse change in working conditions more disruptive than a mere inconvenience or an alteration of job responsibilities." *Galabya v. N.Y. City Bd. of Education,* 202 F.3d 636, 640 (2d Cir. 2000). Even though Plaintiff's salary and benefits remained the same, a reassignment of duties may constitute an adverse employment action where the "employer's actions [were] harmful to the point that they could well dissuade a reasonable

---

**2.** Conceivably, Plaintiff could have brought a First Amendment retaliation claim pursuant to 42 U.S.C. § 1983. Public employment "substantially curtail[s] the right to speak freely in a government workplace," *Singer v. Ferro,* 711 F.3d 334 (2d Cir.2013). The First Amendment does protect a public employee from retaliation from his employer if "the employee spoke as a citizen on a matter of public concern," *Garcetti v. Ceballos,* 547 U.S. 410, 418, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006), but Plaintiff here spoke in his capacity as a Calandra Institute employee.

worker from making or supporting a charge of discrimination." *Kessler v. Westchester Cnty. Dep't of Soc. Servs.,* 461 F.3d 199, 209 (2d Cir.2006) (quoting *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 77, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)). In his old position as Director for Research and Education, Plaintiff supervised "all [Calandra] Institute research activities," including demographic, educational, occupational, and affirmative action studies. Plaintiff was assisted by live staff members, and Plaintiff himself assisted the Queens College Distinguished Professor of Italian American Studies. Milione Decl. Ex. 7. In his new position, Plaintiff's research areas are limited to demographics, migratory movements, and social phenomena related to Italian Americans. Plaintiff no longer assists outside professors and Plaintiff's staff was reduced to three staff members "as projects necessitate." Plaintiff was also given more limited responsibilities in researching CUNY's compliance with its Italian–American affirmative action programs. Milione Decl. Ex. 8. A reasonable jury could find that Plaintiff suffered an adverse employment action.

Third, Plaintiff must show a causal connection between his protected activity and the adverse employment action. In other words, Plaintiff must show "that a retaliatory motive played a part in the adverse employment action." *Kessler v. Westchester County Dept. of Social Services,* 461 F.3d 199, 205–06 (2d Cir.2006). Plaintiff provides no evidence that his 1990 complaint to the Department of Labor or his testimony in the 1990s Scelsa litigation played any part in the change to his job title or responsibilities in 2007. The "passage of time between [these allegedly protected activities] and CUNY's allegedly adverse actions is too great" to show a causal connection. *Fosco v. City University of New York,* 2012 WL 75189, at *3 (S.D.N.Y. Jan. 5, 2012). However, Plaintiff's address-

es to outside groups in June and October 2006 were proximate in time to the changes Dean Tamburri made to Plaintiff's job. Dean Tamburri was strongly critical of Plaintiff's job performance and the scope of Plaintiff's duties, as reflected in the letters they exchanged in January and February 2007. Tamburri instructed Plaintiff to inform him of his meetings and speaking engagements with outside groups, in advance. Milione Decl. Exs. 1–5. As Dean Tamburri instructed, "nothing leaves the Institute on letterhead without me seeing it first," and, "I do not want a repetition of what happened last fall, when, unbeknownst to me, you met with officers of an outside agency and a local politician under the guise of a staff member of the Institute." Milione Decl. Ex. 1.

There is enough to establish a prima facie case of retaliation and shift the burden to Defendants to offer evidence that mere was a legitimate rationale for the employment decision. Defendants argue that Plaintiff's title was changed to more accurately reflect his research activities and hierarchical position below Dean Tamburri. As a new supervisor, Tamburri was entitled to delineate the responsibilities and duties of his employees and set his own agenda for the Calandra Institute. *Brown v. Time,* 1997 WL 231143, at *1, 1997 U.S. Dist. LEXIS 6227, *3 (S.D.N.Y. 1997). When he was appointed Dean in March 2006, Tamburri stated that he would make personnel changes, including retitling Plaintiff. Tamburri Decl. Ex. A. Tamburri expressed his opinion that Plaintiff's broad title more appropriately described the responsibilities of the Dean of the Calandra Institute. Between May 2007 and March 2008, Tamburri modified the titles of six Institute employees. Tamburri Decl. ¶ 10. Tamburri also told all Calandra staff members, not only Plaintiff, that he would approve all official, public

communications regarding the Institute. Tamburri Reply Decl. Exs. K and L. In addition, Tamburri had reasons to be concerned over Plaintiff's job performance, expressing concern over Plaintiff's inability to take direction and work regular hours. Tamburri Decl. Exs. B and D. Finally, in March 2007, Tamburri told Plaintiff that his "functional title" would be changed "to a more realistic one." *Id.* Ex. B.

Defendants' proofs place the burden on Plaintiff to show that Defendants' explanation is mere pretext for unlawful retaliation. Plaintiff "must produce competent evidence that the employer's decision was motivated, at least in part, by an intent to retaliate against him," for engaging in a protected activity. *Mayers v. Emigrant Bancorp, Inc.,* 796 F.Supp.2d 434, 446–48 (S.D.N.Y.2011). Although Dean Tamburri objected to Plaintiff's presentations to outside groups, given without advance clearances, the record does not show that Tamburri intended to retaliate against Plaintiff because he advocated against Italian–American discrimination. Plaintiff's advocacy for Italian Americans continued even after his title change in August 2007. Plaintiff prepared reports on Italian–American affirmative action in October 2007, May 2009, and June 2010. Plaintiff authored a May 2012 report evaluating CUNY's implementation of its Italian–American affirmative action programs. Tamburri Reply Decl. Ex. H. Plaintiff's job title was changed as part of Dean Tamburri's effort to refocus the Institute's attention to the promotion of Italian–American higher education and academic and cultural research. Tamburri altered the functional titles and responsibilities of numerous employees and established Institute-wide policies that employees should consult with him before addressing outside groups on Calandra Institute matters. Inferring that a proffered business reason is pretext for unlawful retaliation "is even less permissible when a new supervisor is appointed, who is entitled to set his own standards and agenda." *Brown,* 1997 WL 231143, *12, 1997 U.S. Dist. LEXIS 6227, *3. As noted above, Tamburri suggested that Plaintiff's job title needed to change as early as March 2006, well before Plaintiff's critical speeches to outside groups in June and October 2006 and the conflicts revealed in the early 2007 correspondences between Tamburri and Plaintiff. Tamburri Decl. Ex. A. Tamburri felt, even then, that Plaintiff had been given inappropriately broad authority and a title not suitable to his position. Plaintiff fails to provide any evidence that Tamburri's plan to alter his job title, originally articulated in March 2006, was motivated by retaliatory animus.

Plaintiff suggests that the timing of his title change, coming less than a year after his 2006 presentations, gives rise to an inference of pretext. But temporal proximity cannot satisfy Plaintiff's burden to show that Defendants' proffered explanation is pretext for unlawful retaliation. *Simpson v. New York State Dep't of Civil Servs.,* 166 Fed.Appx. 499, 502 (2d Cir. 2006) ("While the temporal proximity of these events gives rise to an inference of retaliation for the purposes of appellant's prima facie case, without more, such temporal proximity is insufficient to satisfy appellant's burden to bring forward some evidence of pretext"); *Dowrich v. Aramark Healthcare Support Servs., Inc.,* 2007 WL 2572122 (E.D.N.Y. Sept. 4, 2007); *see also Fosco,* 2012 WL 75189, at *3.

Plaintiff has failed to satisfy his burden of showing that Defendants' proffered explanation is pretextual. Therefore, I grant summary judgment for Defendants as to Plaintiff's Title VII retaliation claim.

### d. Plaintiff's State and Local Law Claims

The dismissal of Plaintiffs federal claims deprives this Court of supplementa-

ry jurisdiction over Plaintiff's remaining state and local law claims. 28 U.S.C. § 1367.

### IV. Motion for a Protective Order

█ Defendants move for a protective order pursuant to Rule 26(c) to preclude the deposition of CUNY Chancellor Goldstein. A district court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" by forbidding or limiting the scope of disclosures or discovery. Fed.R.Civ.P. 26(c). Where a deponent is "sufficiently likely to have knowledge of matters that appropriately are the subject of discovery," a motion for a protective order should be dismissed. *Speadmark, Inc. v. Federated Dept. Stores, Inc.*, 176 F.R.D. 116, 118 (S.D.N.Y.1997).

█ Plaintiff has already deposed his supervisor, Dean Tamburri, and his supervisor's superior, Queens College President Muyskens. The record clearly shows that Goldstein does not have personal knowledge of Plaintiff's employment or the change in his job responsibilities. Plaintiff argues that Goldstein has knowledge by virtue of the fact that copies of letters relating to the change in Plaintiff's job responsibilities were sent to the Chancellor's office. Chancellor Goldstein oversees 24 colleges and professional schools in the New York City area, including Queens College. He did not supervise the Plaintiff or the Calandra Institute. Goldstein affirmed by affidavit that he has no personal knowledge of Plaintiff's employment, and the record does not indicate otherwise. I therefore issue a protective order precluding Chancellor Goldstein's deposition. *See also In re Ski Train Fire of November 11, 2000 Kaprun Austria*, 64 Fed.R.Serv.3d 594, 2006 WL 1328259 (S.D.N.Y.2006) ("Courts disfavor requiring the depositions of senior executives unless they have per-

sonal knowledge of relevant facts or some unique knowledge that is relevant to the action").

### V. Conclusion

For the reasons above and the reasons stated on the record, the Calandra Institute, Queens College, and the Individual Defendants are dismissed from this action. Summary judgment is granted as to Plaintiff's Title VI and Title VII disability discrimination, national origin discrimination, and retaliation claims. Defendants' motion for a Rule 26(c) protective order is also granted.

The Clerk shall mark the motions (Doc. No. 22 and 51) terminated.

SO ORDERED.